**Salem**

## WESTMORELAND COAL COMPANY

v.

## CLYDE C. CAMPBELL

No. 0981-87-3

Decided September 20, 1988

COUNSEL

Michael F. Blair (Penn, Stuart, Eskridge & Jones, on brief), for appellant.

Stephen Vickers, for appellee.

OPINION

MOON, J. — Westmoreland Coal Company seeks reversal of an award allowing compensation for hearing loss to Clyde C. Campbell. We reverse the award on two separate grounds. First, we hold that the doctrine of collateral estoppel precludes any claim by Campbell to benefits for losses occurring before June 28, 1985. Secondly, we reverse that portion of the award allowing compensation for any hearing loss that occurred after June 28, 1985 because Campbell failed to show "to a reasonable medical certainty" that the hearing loss was caused by his employment.

Westmoreland Coal employed Campbell as a miner for nineteen years until his retirement on October 23, 1986. On April 27, 1985, before the enactment of Code § 65.1-46.1,[1] he filed with the commission an application alleging that he had sustained a compensable hearing loss. Based on our holding in *Belcher v. Hampton*, 1 Va. App. 312, 338 S.E.2d 654 (1986), the commission in an opinion dated June 28, 1985, denied the appellant benefits for loss of hearing. Campbell returned to work until his retirement in October, 1986. Code § 65.1-46.1 became effective and Campbell filed a second application for benefits on October 14, 1986 after receiving another diagnosis of hearing loss on October 7, 1986. The commission ruled that because Campbell had returned to work, the doctrine of *res judicata* did not apply to bar his second application.

At a hearing on March 3, 1987, Campbell testified that during his career with Westmoreland Coal, he had been exposed, on a regular basis, to high noise levels within the coal mines. Campbell also testified that from 1945 to 1948 he had served in the Air Force, and for nearly one and a half years had worked on a crash line team at an airstrip. He further recounted that the noise level in the mines was much more severe than that at the. airstrip. In addition, Campbell mentioned that occasionally he used a chain

---

[1] The new statutory provision became effective on July 1, 1986, and authorized compensation for any ordinary disease of life, including hearing loss, that arose out of and in the course of a claimant's employment. The opinion in *Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 365 S.E.2d 782 (1988) provides an overview of the developments leading to the section's enactment.

saw and a shotgun.

At the hearing, the commission considered two doctors' evaluations. Dr. Roger D. Neal explained:

It is my opinion that the hearing loss that Mr. Campbell has in his right ear is consistent with noise exposure but I am unable to say exactly which noise or what noise caused it but the pattern can certainly be consistent with one of loud noise exposure. The hearing loss that he has in his left ear is not 100% consistent with loud noise exposure in my opinion as the hearing loss in the lower frequencies is down more than what I would expect to see with him having as much remaining in his left ear. I have no definite explanation for that except that it may be inner ear related but it is not a typical pattern in his left ear of a pure noise induced hearing loss.

Dr. Claude Crockett also submitted a report in which he concluded that Mr. Campbell's hearing curve was "consistent with prolonged noise exposure in the mines." The report further asserted that the only non-employment factor which might have affected Campbell's hearing was the Air Force experience he had in 1945 through 1948.

■ We hold first that the commission erred by awarding benefits for a hearing loss that had occurred prior to June 28, 1985, the date on which the commission denied Campbell's first application. In *Clinchfield Coal Co. v. Barton*, 6 Va. App. 576, 371 S.E.2d 39 (1988), this court held that Barton, who like Campbell had filed for and been denied benefits prior to the 1986 statutory changes, could not recover for the denied benefits after the statutory changes became effective even if he was exposed to job related noise after the first denial. We held that the doctrine of collateral estoppel barred Barton's subsequent application as to the previously adjudicated claims. In *Childress v. Beatrice Pocahontas Co.*, 6 Va. App. 88, 366 S.E.2d 722 (1988), this court held that an individual who had filed for and been denied benefits prior to the recent statutory changes, could not file again for benefits after the changes became effective. There we held that the doctrine of *res judicata* barred the claimant's subsequent application. Thus, Campbell may assert a substantive claim only for the

hearing loss he experienced from June 29, 1985, until October 23, 1986.

We find, however, that the claimant may not receive benefits for the period of work after the first judgment because he failed to show to a reasonable medical certainty that he suffered any additional hearing loss. Hearing loss was not compensable prior to 1986 unless induced by a sudden episode of acute trauma or unless it occurred as an incident of an occupational disease. *Belcher v. Hampton*, 1 Va. App. 312, 316, 338 S.E.2d 654, 656 (1986). As noted above, Code § 65.1-46.1 modified the law by providing:

An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this Act if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.1-46[2] with respect to occupational diseases and did not result from causes outside of the employment, and that:

(1) It follows as an incident of occupational disease as defined in this title; or

(2) It is an infectious or contagious disease . . .; or

(3) It is characteristic of the employment and was caused by conditions peculiar to such employment.

---

[2] Code § 65.1-46 in pertinent part provides:

A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:

(1) A direct causal connection between the conditions under which work is performed and the occupational disease,

(2) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment,

(3) It can be fairly traced to the employment as the proximate cause,

(4) It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column,

(5) It is incidental to the character of the business and not independent of the relation of the employer and employee, and

(6) It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

The question presented requires us to focus on the language of Code § 65.1-46.1 which states that a claimant must establish "by clear and convincing evidence, to a reasonable medical certainty, that it (the occupational disease) arose out of and in the course of employment." In our opinion, this standard of proof, and specifically that portion requiring that the evidence establish "to a reasonable medical certainty" the fact in issue, was not met in this case. To understand our conclusion, it is necessary to review some general principles regarding burdens of proof and how an appellate court reviews the issue of sufficiency of the evidence to support a decision.

■■■ The term "burden of proof" actually refers to two separate burdens: the burden of producing evidence and the burden of persuasion. When a party has the burden of producing evidence on an issue, that party should receive an adverse ruling on the issue as a matter of law unless he or she produces evidence which a reasonable mind *could* accept as proof of the fact in issue. If the party with the burden of production meets this standard, he or she is entitled to have the finder of fact then determine whether he or she has met the applicable burden of persuasion. In the paradigm civil case, there is no special burden of production (the proponent of the issue simply must produce evidence sufficient to support a finding on that issue), and the burden of persuasion is proof by a preponderance of the evidence. *See generally Bacon v. Bacon*, 3 Va. App. 484, 488, 351 S.E.2d 37, 39-40 (1986).

■■■ On appellate review in a routine civil case, when the sufficiency of the evidence is in issue, the appellate court does not sit to second guess whether the trier of fact correctly or logically found that the prevailing party met his or her *burden of persuasion*. Instead, the appellate court functions much like the judge before whom the case was submitted at the trial level; that is, the function of the appellate court, when reviewing the sufficiency of the evidence, is to determine whether there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved. In this respect, the appellate court, when reviewing the sufficiency of the evidence, performs a function akin to a trial judge when asked to determine whether a party has met his or her burden of production on an issue. In a civil case, the appellate court's function is *not* affected by the burden of persuasion at the trial level; that is, whether the burden of persuasion is

proof by a preponderance of the evidence or proof by clear and convincing evidence, the standard is the same: whether there is credible evidence, when viewed in the light most favorable to the party prevailing below, such that a reasonable mind *could* conclude that the fact in issue was proved. However, the appellate court's function *is* affected by the burden of production. The appellate court, when asked to review the sufficiency of the evidence, must first determine who has the burden of production on a particular issue *and* what precisely that burden is in a given case, i.e., what the party must prove. Only by identifying what must be proved and by whom can the appellate court determine whether sufficient credible evidence was introduced. C. Friend, The Law of Evidence in Virginia § 79 (3d ed. 1988).

■ With that background, we turn to the issue in this case. We conclude that when the General Assembly adopted Code § 65.1-46.1, they altered not only the burden of persuasion but also the burden of production on the issue whether the occupational disease arose out of and in the course of employment.[3] For a claimant to meet his burden of persuasion on this issue, the trier of fact must conclude that the issue was proved by clear and convincing evidence. To meet his burden of production on this issue, the claimant must introduce evidence "to a reasonable medical certainty" that the disease arose out of and in the course of employment.

The term "to a reasonable medical certainty" has no precise meaning under Virginia law. However, in this case, we are not required to define the term with absolute precision. It is sufficient in this case simply to note that the medical evidence showed that the loss of hearing merely was "consistent" with exposure to noise in the mines. We hold that such evidence does not meet the claimant's burden of production on the issue whether the disease arose out of and in the course of employment; thus, we hold that, based

---

[3] The legislative history of Code § 65.1-46.1 indicates that the General Assembly was aware of the higher burden. The subcommittee studying occupational diseases and Code § 65.1-46.1 noted:

> Concern was expressed that the burden of proof standards in the bill were too strict as the injured employee would have to prove by "clear and convincing evidence, to a reasonable medical certainty" that his disease arose out of and in the course of the employment it "did not result from causes outside of the employment."

Report of the Joint Subcommittee Studying Workers' Compensation, H. Doc. No. 27, p. 7 (1986).

upon the evidence in this record, no reasonable mind could conclude that such issue was established "to a reasonable medical certainty." Expert testimony that a fact is "consistent" with a particular cause is not the equivalent of expert testimony "to a reasonable medical certainty." We note, of course, the difficulty that exists when the law attempts to channel professional medical opinion into a precise legal standard. Medicine and law do not always move in perfect harmony. We should not and do not want to require physicians to testify with a degree of precision that is inconsistent with sound medical practice; we do not require more than professional medical opinion can produce. However, if the expert medical witnesses cannot testify that it is at least more probable than not that the disease arose out of and in the course of employment, compensation must and should be denied, not because the law requires more of medicine than it can produce, but because the law requires more than simply proof that the disease "might" have been caused by a particular result.

We have not imposed the formal requirement that a claimant's medical expert proffer an opinion that includes the talismanic words "reasonable medical certainty." However, the medical expert should consider the factors in Code § 65.1-46 and formulate an opinion that complies with the burden of reasonable medical certainty that we have defined.

We find that Campbell did not produce evidence that warranted an award under the new higher burden of proof imposed by the legislature. Since we have dismissed the claimant's application because of insufficient evidence, we do not reach the employer's other allegations of error.

Accordingly, the award appealed from is reversed and the claim dismissed.

*Reversed and dismissed.*

Koontz, C.J., and Coleman, J., concurred.