COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and McClanahan
Argued at Richmond, Virginia


AARON A. HOFFMAN, t/a
 HOFFMAN CONSTRUCTION COMPANY

v.      Record No. 2828-06-2

JAMES MILTON CARTER, JR.                           OPINION BY
                                                   JUDGE ROBERT J. HUMPHREYS
UNINSURED EMPLOYER'S FUND                           AUGUST 14, 2007

v.      Record No. 2839-06-2

JAMES MILTON CARTER, JR.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Irving M. Blank (ParisBlank LLP, on brief), for appellant Aaron A.
Hoffman, t/a Hoffman Construction Company.

Kathryn Spruill Lingle (Midkiff, Muncie & Ross, P.C., on brief),
for appellant Uninsured Employer's Fund.

Jamie L. Karek (Geoffrey R. McDonald & Associates, P.C., on
briefs), for appellee.

In these consolidated appeals, Aaron A. Hoffman, t/a Hoffman Construction Company

("Hoffman"), and the Uninsured Employer's Fund ("the Fund") appeal the Virginia Workers'

Compensation Commission's award of temporary total disability benefits to James M. Carter, Jr.

("Carter"). Hoffman and the Fund argue that (1) Hoffman is not subject to the Virginia

Workers' Compensation Act ("the Act") because it regularly employs fewer than three

employees, (2) Carter did not sustain a compensable injury by accident, and (3) Carter is not

disabled. For the following reasons, we affirm the commission's findings that Hoffman was

subject to the Act and that Carter sustained a compensable injury by accident, but we reverse the commission's finding that Carter suffered a continuing disability.

BACKGROUND

On appeal, we view the evidence in the light most favorable to Carter, the party prevailing below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence established the following:

A. Carter's Exposure to Dust

On June 30, 2005, Carter was performing demolition work on plaster walls inside a house in Weems, Virginia. Carter worked as a laborer and carpenter's apprentice for Hoffman at the time and had done so for approximately one year. One window and at least two doors were open, and a fan was operating as well.[1] Nevertheless, when Carter and his co-worker Barry Fletcher ("Fletcher") began to tear down the walls, "it got really cloudy in [the house] from the dust," because "the stuff was really thick in the air." Although respiratory masks were available, Carter chose not to wear one. After working three to four hours, Carter noticed "a lot of dust and stuff in [his] nostrils[,]" and he began "coughing the stuff up pretty much." The following day, Carter continued "coughing up [] milky phlegm[,]" and left work at 1:00 p.m.

Carter was unable to speak with his doctor's office until the following Tuesday, when he learned that they would require an $85 payment for a consultation. Unable to make this payment, Carter went to the emergency room at Rappahannock General Hospital on July 6, 2005, where he saw Dr. Virginia Gale ("Gale"). Gale noted a normal chest x-ray, prescribed medications, and reported that Carter had experienced "shortness of breath and coughing for the

---

[1] Carter testified that the only ventilation in the house was a small fan; however, the deputy commissioner found his testimony on this subject not credible.

last five days" after being exposed to plaster walls and asbestos.[2]  Gale also noted that Carter had coughed up sputum, sometimes tinged with blood, for the past several days and that Carter experienced chest pains, which worsened when Carter breathed or coughed.  Gale attributed Carter's condition to "chemical inhalation," and recommended that he take five days off work.

Carter again saw Gale on July 13, 2005.  Gale noted a second normal chest x-ray, advised Carter to take an additional five days off from work, and suggested Carter follow up by seeing his family doctor, as well as a pulmonary consultant.

Carter next sought treatment at the Northern Neck Free Health Clinic ("the Clinic") on July 21, 2005.  Carter again complained of a severe cough, stating that he sometimes coughed up blood-tinged phlegm.  The treating physician noted exposure to asbestos, plaster, and sheet rock, and diagnosed chemical pneumonitis.  Feeling no improvement, Carter returned to the Clinic on August 4, 2005.  The Clinic excused Carter from work throughout this period.  The Clinic continued to excuse Carter from work until a subsequent visit on May 2, 2006, in which Clinic personnel recommended in writing:  "No work until condition resolves (may be permanent)."[3]  Carter's medical records last indicate that he received a medical examination on August 23, 2005.  The last entry in Carter's records was made on August 24, 2005, indicating that Clinic staff reviewed Carter's records on that date.

---

[2] The deputy commissioner found that Carter had not met his burden of proof in showing that he was exposed to asbestos or insulation.

[3] The Clinic provided Carter with a slip dated July 21, 2005, which reads:  "Please excuse from 7/21/05 to 7/28/05."  A July 28, 2005 slip reads:  "Mr. Carter should not return to work for [illegible] weeks [illegible] August 05 [illegible]."  A note on clinic letterhead dated August 4, 2005 reads:  "James Carter was seen in this Clinic today and treated.  Please be good enough to excuse him/her from work/school for the date(s) of Aug 4-22nd 2005."  A Clinic note dated August 23, 2005 reads:  "No work until at least next appointment on 9/27/05."  Another note dated December 6, 2005 reads:  "Excuse from work 9/27/05 until Appt at MCV 2/06."

Nurse practitioner Christina Slavin ("Slavin") of the Clinic stated on a questionnaire dated December 12, 2005 that Carter's respiratory condition was "possibly" caused by the incident on June 30, 2005, but a pulmonary consultation was necessary to be certain.[4] She also confirmed his inability to work. Gale opined in a written statement dated February 17, 2006, that "from all of the information presented to [her], it certainly seems that [Carter's] condition was caused by the work situation."

Hoffman hired a physician named Dr. Michael D. Mandel ("Mandel") to review Carter's medical records and provide a written opinion of Carter's condition. Mandel concluded that it was impossible to diagnose Carter with chemical pneumonitis based on the information available to his treating physicians at the time. Mandel stated that a pulmonologist would need to perform more tests in order to properly make this diagnosis. Mandel further concluded that based on Carter's normal chest x-rays, and the negative results of other tests done in the emergency room, Carter in fact did *not* have chemical pneumonitis.

B. Hoffman's Employment Practice

Dennis Bebe ("Bebe") was Carter's supervisor at the Weems job site on June 30, 2005, and Carter worked with Bebe "every day from the time [he] began." Hoffman was also present at the site on most days during Carter's employment. Martin Ward ("Ward"), another carpenter's helper, worked for Hoffman as an employee during the month of June 2005. During Ward's employment, Hoffman hired three subcontractors, "so it was a total of [] eight people."[5] At the time of the incident on June 30, 2005, Fletcher, Carter's co-worker, had worked for Hoffman for approximately eight months.

---

[4] Carter never saw a pulmonologist.

[5] Ward testified to this version of events on behalf of Carter.

Bebe described himself as a freelance carpenter who frequently works for Hoffman Construction. Hoffman described Bebe as an independent contractor, not his employee.

## C. Procedural History

Carter filed a claim for workers' compensation benefits with the commission. Hoffman filed numerous defenses, including: (1) Hoffman was not subject to the Workers' Compensation Act because it did not regularly employ three or more individuals, (2) Carter did not sustain a compensable injury by accident, and (3) Carter was not disabled. Because Hoffman did not carry workers' compensation insurance, the Fund joined with Hoffman and asserted the same defenses against Carter. The presiding deputy commissioner rejected Hoffman and the Fund's defenses, and awarded Carter temporary total disability benefits from July 6, 2005 through February 28, 2006, and beginning May 2, 2006, continuing until Carter's condition improves. The full commission, by opinion dated October 20, 2006, affirmed the deputy commissioner's decision. Hoffman and the Fund now appeal.

## ANALYSIS

Hoffman and the Fund argue, as they did to the commission, that (1) Hoffman is not subject to the Workers' Compensation Act because it does not regularly keep three or more employees in its service, (2) Carter did not sustain a compensable injury by accident, and (3) Carter is not disabled.

In reviewing a judgment of the Workers' Compensation Commission, we "'determine whether credible evidence supports the [c]ommission's finding . . . and, if such evidence exists, [we] sustain the finding.'" Perry v. Delisle, 46 Va. App. 57, 63-64, 615 S.E.2d 492, 495 (2005) (*en banc*) (quoting Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985)) (omission in original). As a result, "we do not judge the credibility of witnesses or weigh the evidence on appeal." Id. at 64, 615 S.E.2d at 495 (internal quotation marks omitted).

Furthermore, we are bound by the commission's factual findings supported by credible evidence, despite the fact that there may be evidence to support a contrary finding. See Watkins v. Halco Eng'g. Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

### A. Hoffman's Employees Regularly in Service

Hoffman and the Fund first argue that Hoffman is not subject to the Act because Hoffman does not regularly keep three or more employees in its service.[6]

All employers and employees in Virginia are "conclusively presumed to have accepted the provisions of [the Act]." Code § 65.2-300(A). Excluded from this presumption, however, are "[e]mployees of any person, firm, or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Code § 65.2-101. In other words, if an employer has three or more employees "regularly in service," it is subject to the Act and responsible for providing workers' compensation benefits to qualifying employees. If an employer has fewer than three employees "regularly in service," it is not subject to the Act and has no obligation to provide its employees with workers' compensation benefits. See id. Therefore, an employer can defeat a claim for workers' compensation if it is able to prove, by a preponderance of the evidence, that it "has regularly in service" fewer than three employees in Virginia. Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 3, 427 S.E.2d 428, 430 (1993).

However, we have held that "an employer [who] regularly employs three or more persons to carry out the established mode of performing the work of the business, [] should remain

---

[6] The Fund cites no authorities or principles of law in support of its argument. "'Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004) (quoting Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003)); see Rule 5A: 20(e) (requiring appellants to brief the "principles of law, the argument, and the authorities relating to each question presented"). The Fund, therefore, has waived this question presented on appeal, and we will only address those arguments made by Hoffman.

subject to the provisions of the Act even if . . . the number of his employees temporarily falls below three." Cotman v. Green, 4 Va. App. 256, 259, 356 S.E.2d 447, 449 (1987).  An employer is considered to have "regularly in service" three or more employees "if the recurring periods of employing" three individuals is "the rule and not the exception."  Osborne v. Forner, 36 Va. App. 91, 96, 548 S.E.2d 270, 272-73 (2001).  In determining whether an employer is subject to the Act, the commission must examine "[t]he number of persons used to carry out the established mode of performing the work of the business[,]" and focus ultimately on "the character of the business" rather than "the character of the employment relationship."  Cotman, 4 Va. App. at 259, 356 S.E.2d at 448.

Thus, in order to defend itself from a claim on the grounds that it is not subject to the Act, an employer must prove by a preponderance of the evidence that (1) it had fewer than three employees "regularly in service" in Virginia at the time of the alleged incident, and (2) at the time of the alleged incident, the employer's "established mode of performing business" regularly required fewer than three employees.  Perry, 46 Va. App. at 65, 615 S.E.2d at 496.  This requirement "avoids adverse effects from unusual, temporary conditions[,]" which could make "employer's status [] fluctuate between being subject to the Act and exempt from the Act."  Cotman, 4 Va. App. at 259, 356 S.E.2d at 448-49.

Whether an employer regularly employs fewer than three employees is a factual determination made by the commission.  See Bass v. City of Richmond Police Dept., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999).  Likewise, whether an employer's "established mode of business" requires three or more employees is a question of fact to which we give great deference on appeal.  See Osborne, 36 Va. App. at 97, 548 S.E.2d at 273.

Here, the commission found that Hoffman proved neither that he regularly kept fewer than three employees in his service, nor that the nature of his business entailed the service of

fewer than three employees.[7]  The record contains credible evidence that supports the

commission's findings.  Hoffman admitted that he had two employees on June 30, 2005.  Earlier

that month, when Ward was working, Hoffman had three employees.  Ward testified that during

his brief employment at Hoffman, Hoffman hired three subcontractors, "so it was a total of []

eight people."  Because employees of Hoffman's subcontractors are treated the same as

Hoffman's own employees under the Act, see Smith v. Weber, 3 Va. App. 379, 381, 350 S.E.2d

213, 214 (1986), the burden rested with Hoffman to prove the number of employees the

subcontractors employed.  Hoffman produced no evidence in this regard.

The record also contains no evidence that Hoffman's business practices had changed after

Carter's injury so that the business could function with fewer than three employees.  The

commission found that Hoffman did not rebut Carter's evidence, and thus did not meet his

burden of proof.  Because the record contains credible evidence supporting the commission's

determination, we hold that the commission did not err in finding Hoffman subject to the Act.

### B.  Injury By Accident

Hoffman and the Fund next argue that the commission erred by finding that Carter

sustained an "injury by accident," which the Act requires for Carter to receive workers'

compensation benefits.  See Code § 65.2-300(A).  In order to prove an injury by accident, Carter

must prove:  "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an

obvious sudden mechanical or structural change in the body; and (4) a causal connection

between the incident and the bodily change."  Chesterfield County v. Dunn, 9 Va. App. 475, 476,

---

[7] The commission reached this decision under the rationale that Hoffman's normal business practice was to keep three employees and a number of statutory employees in its service.  Because the commission had found Hoffman subject to the Act without discussing Bebe, the commission found it unnecessary to decide whether Bebe was an employee of Hoffman; it considered the question moot.

389 S.E.2d 180, 181 (1990).  Whether Carter sustained an injury by accident is an issue of fact.

See Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 288, 572 S.E.2d 505, 510 (2002).

1.  An Identifiable Incident and Sudden Structural or Mechanical Change

The Act requires proof of "an identifiable incident or sudden precipitating event [that

results] in an obvious sudden mechanical or structural change in the body."  Morris v. Morris,

238 Va. 578, 589, 385 S.E.2d 858, 865 (1989).  In contrast, "a gradually incurred injury is not an

injury by accident within the meaning of the Act."  Dollar General Store v. Cridlin, 22 Va. App.

171, 175, 468 S.E.2d 152, 154 (1996) (citing Middlekauff v. Allstate Ins. Co., 247 Va. 150, 154,

439 S.E.2d 394, 397 (1994)).  "Though an injury by accident must be 'bounded with rigid

temporal precision,' . . . an injury need not occur within a specific number of seconds or minutes

. . . but instead, must occur within a 'reasonably definite time.'"  Id. (quoting Brown v.

Caporaletti, 12 Va. App. 242, 243-44, 402 S.E.2d 709, 710 (1991) (internal quotation marks

omitted)).

In Southern Express v. Green, 257 Va. 181, 509 S.E.2d 836 (1999), a case factually

similar to this one, the Supreme Court of Virginia reiterated the parameters of "injury by

accident."  In that case, the claimant suffered from chilblains[8] after spending over four hours in a

walk-in cooler of the convenience store in which she worked.  Id. at 183, 509 S.E.2d at 837.  The

Supreme Court held that this four-hour exposure to the cold constituted an identifiable incident

or event "bounded by rigid temporal precision," and not an injury resulting from "repetitive

trauma . . . or [] cumulative event[s,]" as the employer argued.  Id. at 189, 509 S.E.2d at 840-41

(citations omitted).  Because the claimant's condition was not an "'injury of gradual growth . . .

caused by the cumulative effect of many acts done or many exposures to conditions prevalent in

the work,'" the Supreme Court held that the claimant's condition was related to an "identifiable

---

[8] Chilblains is a type of cold injury resulting in painful blisters and ulcers.

incident" sufficient to prove an injury by accident. Id. at 189, 509 S.E.2d at 841 (quoting Aistrop

v. Blue Diamond Coal Co., Inc., 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943)).

In the present case, Carter testified that he worked three to four hours when he noticed "a

lot of dust and stuff in [his] nostrils[,]" and he began "coughing the stuff up pretty much." He

continued coughing and left work early the next day, and went to a physician at the first available

opportunity. Therefore, we hold that the evidence is sufficient to support a finding that Carter's

exposure to plaster dust was "bounded by rigid temporal precision," and thus constituted "an

identifiable incident."

During his first consultation with Dr. Gale, Carter indicated that he was coughing up

"milky phlegm," and he complained of shortness of breath and chest pains when he breathed or

coughed. Based on his symptoms, Gale diagnosed Carter with chemical inhalation. Mandel's

opinion merely rules out the possibility that Carter had contracted chemical *pneumonitis*. It does

not rule out the possibility that Carter may have sustained some other form of respiratory injury.

Moreover, we have never held that a claimant was required to prove a particular type of injury or

diagnosis, see Dollar General Store, 22 Va. App. at 177, 468 S.E.2d at 154, and the record

contains sufficient evidence from which the commission could find that Carter suffered a sudden

structural or mechanical change in his body, specifically, a respiratory injury.

## 2. Causation

Hoffman and the Fund next argue that the evidence did not establish a causal connection

between Carter's exposure to dust and his physical condition. Carter bore the burden of proving,

by a preponderance of the evidence, a causal connection between the work-related incident and

the bodily change. See Dunn, 9 Va. App. at 476, 389 S.E.2d at 181. Thus, Carter was required

- 10 -

to prove that his condition resulted from his on-the-job exposure to the dust.[9] Id. "The testimony of a claimant may [] be considered in determining causation, especially where the medical testimony is inconclusive." Dollar General Store, 22 Va. App. at 176, 468 S.E.2d at 154. However, "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed v. Morengo, Inc., 19 Va. App. 199, 205, 450 S.E.2d 167, 171 (1994).

Here, Hoffman and the Fund argue that Dr. Gale's medical opinion stemmed from inaccurate information provided by Carter. Gale's reports indicate that Carter was exposed to asbestos and insulation. Because the deputy commissioner specifically found that Carter did not prove he was exposed to these substances, Hoffman and the Fund reason that the commission should not have considered Gale's report as evidence of causation. However, nothing in Gale's report indicates that exposure to asbestos or insulation was the controlling factor in her diagnosis. Gale's opinion was that Carter had experienced "chemical inhalation," not "asbestos

---

[9] The Fund cites Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 224, 372 S.E.2d 411, 416 (1988), for the proposition that a claimant bears the burden of establishing "to a reasonable degree of medical probability" that his disability is related to his work injury. Westmoreland involved the construction of former Code § 65.1-46.1, which provided that a claimant could receive compensation for an ordinary disease of life if that claimant proved, among other things, that "to a reasonable medical certainty, [the disease] arose out of and in the course of employment . . . and [] not [] from causes outside of the employment[.]"
   In Westmoreland, we did not specifically define "a reasonable medical certainty," but held that:

> [I]f the expert medical witnesses cannot testify that it is at least more probable than not that the disease arose out of and in the course of employment, compensation must and should be denied, not because the law requires more of medicine than it can produce, but because the law requires more than simply proof that the disease "might" have been caused by a particular result.

Westmoreland, 7 Va. App. at 224, 372 S.E.2d at 416. Thus, for our purposes, "to a reasonable medical certainty" is equivalent to a preponderance of the evidence standard. See id.

inhalation" or "insulation inhalation," and she mentions Carter's exposure to plaster dust on more than one occasion.

Hoffman and the Fund also argue that Dr. Gale's opinion, in which she states that, "from all of the information presented to [her], it certainly seems that [Carter's] condition was caused by the work situation[,]" is too indefinite to support the finding that Carter's condition was caused by his exposure to the plaster dust. Furthermore, Hoffman and the Fund note that Slavin stated that Carter's condition was only "possibly" caused by his exposure to dust. As finder of fact, the commission is entitled to weigh the evidence, and give more weight to Gale's opinion. In our view, Gale's statement that it "certainly seems" that Carter's condition was related to his exposure to dust is sufficient to prove causation by a preponderance of the evidence.

Accordingly, we hold that the record contains credible evidence to support the commission's finding that Carter suffered an "injury by accident."

## C. Disability

Hoffman and the Fund's final argument on appeal is that the commission erred in finding that Carter suffered a continuing disability.[10] "[A] party seeking [workers'] compensation bears the burden of proving his disability and the periods of that disability." Marshall Erdman & Assocs. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149-50 (1997). Furthermore, "[t]here is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time." Id. at 679, 485 S.E.2d at 149. Whether Carter suffered a continuing disability is also a question of fact. Id.

In Loehr, the claimant presented to the commission a letter from his treating physician. The letter was ten months old at the time of his hearing before the deputy commissioner and

---

[10] Because Hoffman did not identify this issue as a distinct question presented in his brief, he has waived this issue on appeal. Consequently, we only address those arguments made by the Fund on this question presented. See Rule 5A:20(c).

- 12 -

seventeen months old at the time of his hearing before the full commission. The letter indicated that the claimant's physician had previously placed him on light duty, restricting the claimant's lifting to forty pounds or less. It also stated that, as the claimant's condition improved, "[the physician] would progress [the claimant] to full duties." Nothing in the letter indicated the occasion upon which the physician had last treated the claimant, how long the physician expected the disability to continue, or when, if ever, the claimant would receive additional medical evaluation. Id. at 680, 485 S.E.2d at 150. Because the record lacked evidence of a continuing disability and contained credible evidence that the claimant was expected to return to full duties, we affirmed the commission's finding that the claimant was not entitled to continuing disability benefits. Id.

Here, Carter presented a slip from the Clinic that read: "[n]o work until condition resolves (may be permanent)." Unlike the letter submitted in Loehr, this slip does not suggest that Carter is expected to recover. However, Carter's slip is similar to the letter submitted in Loehr in that it did not give any estimate as to how long Carter's condition was expected to continue, other than the vague assertion that it "may be permanent." Likewise, the slip did not indicate when, if ever, Carter would undergo his next medical examination. Furthermore, the record contains no evidence that Clinic personnel examined Carter or even reviewed his medical records after August 24, 2005, the date of the final entry in Carter's medical charts. The slip was purportedly issued by Clinic personnel on May 2, 2006, almost nine months after Carter's last recorded examination. The hearing before the deputy commissioner did not occur until June 20, 2006, and the full commission review did not take place until approximately four months later. The only additional evidence Carter presented in this regard was his own testimony that no doctor had released him to light duty work, which is essentially a restatement of the information contained in the disability slips. Based on our review of the record, we hold that there is no

- 13 -

credible evidence to support the commission's finding of disability from May 2, 2006 and continuing.  Accordingly, we reverse the commission on this issue.[11]

CONCLUSION

For the reasons stated, we affirm the commission's findings that Hoffman is subject to the Workers' Compensation Act and that Carter sustained an "injury by accident."  However, we reverse the commission's finding that Carter suffered a continuing disability.  Accordingly, we vacate the commission's award of benefits from May 2, 2006 and continuing, and remand the case for further proceedings consistent with this opinion.

<u>Affirmed in part,
reversed in part
and remanded.</u>

---

[11] We hold only that the commission's finding of a *continuing* disability beginning May 2, 2006 is unsupported by the evidence.  The commission's finding of Carter's initial disability period beginning July 6, 2005, lasting through February 28, 2006, is supported by credible evidence, and we affirm that finding.