COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge Elder and Senior Judge Bumgardner
Argued at Alexandria, Virginia


STARBUCKS COFFEE CO. AND
    AMERICAN ZURICH INSURANCE COMPANY
                                                        MEMORANDUM OPINION[*] BY
v.      Record No. 2203-10-4                   CHIEF JUDGE WALTER S. FELTON, JR.
                                                              APRIL 12, 2011
NATHAN MERRILL


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Paul A. Kemp (Andrew M. Alexander; Semmes, Bowen & Semmes,
            P.C., on briefs), for appellants.

            Christopher P. Schewe for appellee.


        Starbucks Coffee Co. and its insurer, American Zurich Insurance Company, (collectively

"employer") appeal a decision of the Virginia Workers' Compensation Commission

("commission") awarding Nathan Merrill ("claimant") temporary total disability benefits

beginning August 8, 2009 and continuing.  For the following reasons, we affirm the

commission's decision.

                                        BACKGROUND

        On appeal, it is undisputed that on December 31, 2008, claimant suffered an injury to his

back during the course of his employment and thereby was entitled to medical benefits and wage

loss benefits from January 5, 2009 to January 9, 2009.  However, employer asserts that the

commission erred in finding claimant's disability after August 8, 2009 was causally related to his

December 31, 2008 work injury.  Employer contends that the deputy commissioner's finding that

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"claimant was a candid and credible witness" is unreliable because his testimony conflicts with medical records related to his back injury history. Employer further asserts that the commission erred in relying on the medical opinion of claimant's treating physician, Dr. Brian Subach, arguing that claimant failed to provide accurate information to Dr. Subach relating to his pre-employment history of back problems.

"[W]e view the evidence in the light most favorable to [claimant], the party prevailing below." Hoffman v. Carter, 50 Va. App. 199, 205, 648 S.E.2d 318, 321 (2007).[1] Following claimant's work injury on December 31, 2008, claimant was treated at the Inova Fairfax Hospital's emergency room.[2] The emergency room record from December 31, 2008 states that claimant had a history of back pain that was "post-traumatic in etiology" from a forty-foot fall in Korea nine years prior while he was in the Army, resulting in fractures to his ankles and hip and nerve damage in his back. The record is silent as to whether claimant applied for or was awarded any service related disability benefits. At the deputy commissioner's hearing, claimant testified that he remembered little or nothing of his visit to the emergency room on December 31, 2008. He further testified that he did not know who gave the rescue squad or the hospital the incorrect medical history in his records that he fell and fractured his ankles and hip in Korea. He admitted that he slipped down a hill on a rainy night near the DMZ in Korea while he was in the Army and wondered after the fall whether he had fractured anything. He denied fracturing his hip and ankle and causing nerve damage to his back in the fall.

On January 5, 2009, claimant saw Dr. Eugene Overton, a family practitioner and claimant's primary care physician. On that date, Dr. Overton diagnosed claimant with acute low

---

[1] As the parties are fully conversant with the lengthy record in this case, we recite only those facts and incidents of the proceedings as are necessary to the disposition of this appeal.

[2] Claimant was in severe pain following his injury. He was placed on an intravenous solution of morphine, Valium and Phenergan before he was able to be transported to the hospital.

back syndrome with signs and symptoms of a herniated disc. He recommended x-rays and an MRI and prescribed medication and bed rest. Dr. Overton's medical chart reflects that claimant had trouble with his back ten years previously, without further explanation. On January 9, 2009, Dr. Overton released claimant to work with a "no heavy lifting" restriction. Claimant returned to work for employer on January 14, 2009.

On April 6, 2009, following his return to work, claimant was involved in a non-work-related automobile accident. He drove his car home following the accident without seeking medical treatment. Nine days later, on April 15, 2009, claimant consulted Dr. Crane-Lee for lower back pain.[3] Claimant's medical records from Dr. Crane-Lee's office reflect, "[t]his is an acute episode with no prior history of back pain," precipitated by the April 6, 2009 motor vehicle accident.

On May 28, 2009, claimant completed a patient information sheet for Dr. Brian Subach at the Virginia Spine Institute and noted his December 31, 2008 back injury and April 6, 2009 car accident in his medical history. Dr. Subach's medical records reflect that claimant had lower back and leg pain after an injury at work on December 31, 2008, which was exacerbated by a car accident on April 14, 2009.[4] Dr. Subach reviewed claimant's January 5, 2009 MRI, taken at Dr. Overton's direction, and stated that it showed a herniated disc at the L5/S1 level.

Following several months of conservative treatment, on July 24, 2009, Dr. Subach concluded that surgery was claimant's only remaining treatment option. Dr. Subach restricted

---

[3] In his deposition, claimant described Dr. Crane-Lee as his new primary care physician. He testified that he changed primary care physicians because of a wait of several hours to see Dr. Overton on a follow-up visit.

[4] In its written opinion, the commission states claimant's car accident occurred on April 14, 2009, the date used in Dr. Subach's report and the date listed by claimant on his new patient information sheet. Claimant testified before the deputy commissioner that the April 14, 2009 date was incorrect and that his car accident occurred on April 6, 2009. The deputy commissioner's opinion gives April 6, 2009 as the date of claimant's car accident.

claimant from work, beginning August 8, 2009, due to his pain. Claimant underwent back surgery on September 28 and 30, 2009. He was discharged from the hospital on October 3, 2009 and seen by Dr. Subach for a follow-up exam on October 13, 2009. He prescribed physical therapy while keeping claimant in a no work status. Claimant's medical records from Dr. Subach contain no information relating to a previous fall by claimant in Korea.

Dr. Subach opined, to a reasonable degree of medical probability, that claimant's December 31, 2008 lifting incident proximately caused his back problems, notwithstanding the doctor's awareness of the April 6, 2009 automobile accident. Dr. Subach opined that the MRI dated January 5, 2009, ordered by Dr. Overton, showed clamant had a herniated disc at L5-S1. Dr. Subach also opined that claimant was totally disabled from August 8, 2009 to the present and that his September 2009 back surgeries were a direct and proximate result of the December 31, 2008 accident.

Dr. Robert O. Gordon performed an independent medical evaluation on January 28, 2010 at employer's request. He opined that claimant had pre-existing back problems stemming from his fall nine years prior to December 31, 2008 and that claimant's back surgery was not related to his work-related accident. Dr. Gordon also noted that claimant provided a different medical history to his previous physicians than he had previously provided the emergency room personnel. In response to the deputy commissioner's questions, claimant testified that he remained clothed during his evaluation with Dr. Gordon and that the evaluation took approximately three minutes, and consisted only of testing the reflexes in his knees and ankles and bending forward and to the sides.

ANALYSIS

The deputy commissioner found claimant to be "a candid and credible witness" and stated that he "afford[ed] preferential weight" to Dr. Subach's opinions as claimant's "primary treating orthopedic surgeon."

> In reviewing the commission's decision, we are guided by well-settled principles. "[I]t is fundamental that a finding of fact made by the [c]ommission is conclusive and binding upon this court on review." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). See also Code § 65.2-706. "[T]hat contrary evidence may be in the record is of no consequence if there is credible evidence to support the [c]ommission's findings." Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986). "A question raised by conflicting medical opinion is a question of fact." Powell, 2 Va. App. at 714, 347 S.E.2d at 533.

Sneed v. Morengo, Inc., 19 Va. App. 199, 204-05, 450 S.E.2d 167, 170-71 (1994). In its role as the finder of fact, "the [c]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999).

It is not the function of this Court to determine the credibility of a witness where there is evidence in the records presented to the deputy commissioner to support the witness' testimony. "A witness' credibility may, in part, be determined by his appearance and demeanor upon testifying. Due process of law requires that, where credibility is at issue, the administrative agency making the finding must have the benefit of the impressions of persons who heard the testimony of the witness." Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987) (citations omitted). "Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness." Id. "'[I]t is our duty to determine whether credible evidence supports the [c]ommission's finding . . . and, if such evidence exists, to sustain the finding.'" Celanese Fibers

Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985) (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983) (citations omitted)) (first alteration in original).

Here, the deputy commissioner resolved the conflicts in the evidence including the conflicting medical history in claimant's medical records, against employer. "It is not our function, but the [c]ommission's, to weigh conflicting evidence, and when there is credible evidence to support the [c]ommission's findings, we are bound thereby." Chandler v. Schmidt Baking Co., Inc., 228 Va. 265, 268, 321 S.E.2d 296, 298 (1984). Applying these principles, we cannot say on this record that the commission erred in finding claimant candid and credible. Nor can we conclude that the commission erred in giving deference to the expert opinion of Dr. Subach, claimant's treating physician, that claimant's work-related injury on December 31, 2008 was the cause of his back problems, despite the inconsistencies in claimant's medical records, and that he was unable to work as a result from August 8, 2009 and continuing.

Accordingly, for the reasons stated above, we affirm the finding of the commission.

Affirmed.