COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges Ortiz, Raphael and Lorish
Argued at Fairfax, Virginia


THE UNINSURED EMPLOYERS' FUND

                                          OPINION BY
v.      Record No. 1598-24-4      JUDGE STUART A. RAPHAEL
                                          FEBRUARY 24, 2026

JOSE A. ZACARIAS PEREZ


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Justin R. Main (Siciliano, Ellis, Dyer & Boccarosse PLC, on brief),
> for appellant.
>
> Richard M. Reed (The Reed Law Firm, P.L.L.C., on brief), for
> appellee.


The Workers' Compensation Commission awarded Jose A. Zacarias Perez temporary

total disability and medical benefits for work-related injuries that he sustained in March 2022.

The Uninsured Employers' Fund appeals that award, arguing that the Commission lacked

jurisdiction over Perez's claim because his employer did not have three or more employees

"regularly in service" within the meaning of Code § 65.2-101. The Commission found as a

factual matter that most of the employer's jobs required three or more employees to staff the

work at some time during each job. Because the record supports that factual finding, we affirm.

Ibnan Johri owned Gencon, a general contracting business offering basement, bathroom, and kitchen remodeling. Johri operated Gencon as a sole proprietorship.[2] Gencon employed Perez and Nester Lemus as its only employees.[3]

On March 29, 2022, during work on a Gencon project, Perez sustained multiple injuries when a concrete wall collapsed on him. On November 22, Perez filed a claim with the Commission seeking temporary total disability, medical-bill reimbursement, and a lifetime medical award. Perez filed additional claims in January 2023, seeking reimbursement for medical bills and mileage. Gencon did not have workers' compensation insurance. Accordingly, counsel for the Uninsured Employer's Fund defended the claim.

*A. Gencon's employment history*

The parties do not contest Perez's injuries nor dispute that he earned $600 per week at Gencon. The sole issue here is whether Gencon had three or more employees "regularly in service," the jurisdictional threshold under Code § 65.2-101 to require that Gencon have workers' compensation insurance.

Perez, Lemus, and Johri testified at the hearing before Deputy Commissioner Kennard on October 11, 2023. The testimony described various Gencon projects during the ten months preceding Perez's injury.

---

[1] We recite the facts in the light most favorable to Perez, the party that prevailed before the Commission. *City of Charlottesville v. Sclafani*, 300 Va. 212, 223 (2021).

[2] Though Gencon started as a limited liability company in 2014, it ceased doing business in that form in August 2021.

[3] There was some testimony before the Commission about a third employee, Edwin, who worked periodically in 2020. The Commission did not treat Edwin as an employee "regularly in service," however, and neither party challenges that treatment here.

*May 2021 project*

Gencon broke ground on a $75,000 basement remodeling job in early May 2021. Perez and Lemus worked on the project, which lasted about four to five months. Gencon also enlisted the help of four subcontractors: Carlos (carpet installer), Peter (electrician), Santos (drywall installer), and a "countertop crew." Peter and Santos worked alone, taking about four days each to finish their work. Carlos brought his wife to help with the work, and the two completed their carpet-installation work in less than one day. The countertop crew, consisting of two to three workers, completed their work in five to six hours. In short, eight or nine tradespeople contributed to the May 2021 project, with the non-Gencon workers taking four days or less to complete their tasks. Perez and Lemus were on site for the entire project.

*July 2021 project*

Starting in July 2021, Gencon worked on a $22,000 project to repair water damage. Perez and Lemus both worked on the project, in addition to three subcontractors: Peter, Carlos, and Paul (installing cabinets). Like the May 2021 project, Peter worked alone and took "20-30 minutes" to complete his electrical work. Carlos and his wife took a "half day" to install the carpet, and Paul and his assistant installed the cabinets in one day.

In sum, the July 2021 project required seven tradespeople. The non-Gencon workers finished their work in one day or less.

*September 2021 project*

It was at Gencon's third major project in 2021—a six-month basement remodel—that Perez was injured. Perez and Lemus were tasked with installing a basement egress door, an $8,500 addition to the $34,000 job. Johri subcontracted with Peter for the electrical work. As usual, Peter worked alone and was done in two days. The countertop crew did its work in less

than two hours.[4] A plumber, working alone, did his work in "no more than two days." In sum, the four to five non-Gencon workers finished their work on the September 2021 project in two days or less.

*Other 2021 projects*

In addition to the May, July, and September 2021 projects, Gencon worked on two smaller remodeling projects for two of Johri's friends. Perez, Lemus, Paul, and Paul's assistant worked on the first project, remodeling a kitchen and bathroom. Paul and his assistant finished their cabinet installation in three days.[5]

Perez and Lemus were not onsite for the second project. Instead, Johri hired a "painter from 7-Eleven" and subcontracted again with Paul and the countertop crew. Paul and his assistant installed the cabinets in two days. The countertop crew took five to eight hours to do their work. The painter worked for two days.[6]

### B. Proceedings before the Workers' Compensation Commission

Based on the facts set forth above, Deputy Commissioner Kennard found that Johri operated Gencon as a sole proprietorship and that he was not an employee. Kennard also found that Peter (electrician), Santos (drywall installer), and the plumber were sole proprietors and not Gencon employees. And although Paul (cabinet installer) and Carlos (carpet installer) both used an assistant, "their work for Gencon was so infrequent" and irregular that it did not "warrant a finding that they were part of Gencon's established mode of performing its remodeling

---

[4] Because the homeowner paid the countertop crew directly for their work, the full Commission did not treat them as subcontractors' employees for this job.

[5] Like the homeowner for the September 2021 project, Johri's friend paid Paul directly for his work installing the cabinets. So the full Commission did not treat Paul's assistant as a subcontractor employee for this job.

[6] The painter was not considered an employee regularly in service, which was not disputed on review before the Commission.

business." Based on that finding, Kennard held that Gencon "did not have the requisite number of employees regularly in service to confer jurisdiction" under the Workers' Compensation Act. So Perez's claims were not compensable and were therefore denied.

Upon Perez's request for review, the full Commission reversed. Though it agreed that Johri was not an employee, the Commission found that of the five jobs that Gencon "performed in the year before [Perez's] accident, only two did not require work from a subcontractor's employee." The other three projects "each required at least two employees of subcontractors to complete." In other words, "[i]t was more likely than not that a subcontractor's employee would be working, at least for a limited period," at Gencon's job sites. Based on "the nature of [Gencon's] business and the frequency with which it used subcontractors with employees" (in addition to Perez and Lemus), the Commission reversed Kennard's "finding that the employer had fewer than three employees regularly in service" and was "not subject to the Act's jurisdiction."

On remand, Kennard considered Johri's willful-misconduct defense. Finding that Perez had not engaged in willful misconduct, Kennard awarded Perez's claim. The Commission affirmed, and this appeal followed.

ANALYSIS

"All employers and employees in Virginia are 'conclusively presumed to have accepted the provisions'" of the Workers' Compensation Act. *Ragland v. Muguruza*, 59 Va. App. 250, 255 (2011) (quoting Code § 65.2-300(A)). "Excluded from this presumption, however, are '[e]mployees of any person, firm, or private corporation . . . that has regularly in service less than three employees.'" *Id.* (alterations in original) (quoting Code § 65.2-101). "Whether an employer regularly employs fewer than three employees is a factual determination made by the commission." *Hoffman v. Carter*, 50 Va. App. 199, 211 (2007). The employer bears the burden

of proving that it had fewer than three employees regularly in service. *Id.* "[W]e give great deference on appeal" to the Commission's factual findings on that question. *Id.*

"To determine whether an employee is 'regularly in service,' we examine the employer's 'established mode of performing the work.'" *Osborne v. Forner*, 36 Va. App. 91, 96 (2001) (quoting *Cotman v. Green*, 4 Va. App. 256, 259 (1987)). The word "'regularly' implies a 'practice,' or a 'constant or periodic custom' of employment." *Id.* (internal citations omitted). So "we look for 'regularly-recurring periods' of employing the requisite number of persons over some reasonable period of time." *Ragland*, 59 Va. App. at 257 (quoting *Osborne*, 36 Va. App. at 96). "[W]hether an employer's 'established mode of business' requires three or more employees" is also a question of fact, warranting "great deference on appeal" to the Commission's finding. *Hoffman*, 50 Va. App. at 211 (quoting *Osborne*, 36 Va. App. at 97).

Neither party disputes the Commission's finding that Johri, as a sole proprietor, is not an employee under the Act. *See Osborne*, 36 Va. App. at 95-96; Code § 65.2-101(1)(n). Nor do they dispute that Paul's assistant, Carlos's wife, and the countertop crew qualify as statutory employees under the Act. *See Hoffman*, 50 Va. App. at 212 ("employees of [the contractor's] subcontractors are treated the same as [the contractor's] own employees under the Act").[7]

The question here is whether the Commission erred in finding that those statutory employees—in addition to Perez and Lemus—were "regularly in service" as part of Gencon's

---

[7] Subcontractors and independent contractors are "not countable as employees within the meaning of the Work[ers'] Compensation Act." *Stover v. Ratliff*, 221 Va. 509, 511 (1980). The "Act requires an employment relationship of some kind to exist between a claimant and the party allegedly liable for compensation." *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 90 (2019); *see also Stover*, 221 Va. at 511 ("[T]he Act applies to the contractual relationship of master and servant."). Code § 65.2-302 creates a "category of employment relationship called '[s]tatutory employer.'" *Jeffryes*, 297 Va. at 90. It was designed "to 'protect the employees of subcontractors who are not financially responsible and to prevent employers from relieving themselves of liability (for compensation) by doing through independent contractors what they would otherwise do through direct employees.'" *F. Richard Wilton, Jr. v. Gibson*, 22 Va. App. 606, 609 (1996) (quoting *Bassett Furn. Indus., Inc. v. McReynolds*, 216 Va. 897, 902 (1976)).

"established mode of performing the work." *Osborne*, 36 Va. App. at 96. In answering that question, "the focus shifts to the character of the business and away from the character of the employment relationship." *Cotman*, 4 Va. App. at 259. Doing so "avoids adverse effects from unusual, temporary conditions." *Id.* We said in *Cotman*—decided more than 40 years ago—that

> [i]f an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if one or more of the employees works less than full-time, or if the number of his employees temporarily falls below three.

*Id.* (citing 1C A. Larson, Workmen's Compensation § 52.20 (1986)).

The Fund agreed at oral argument here that the Commission "looked at the right period" by examining Gencon's jobs in the year preceding the accident. The Commission found, as to "the 'character of the business,' that Gencon is a residential contractor specializing in basement remodeling, including waterproofing and water damage repair." Perez, Lemus, and Johri performed "demolition, carpentry, and painting." But when more "specialized work was required," Johri relied on the same collection of tradespeople to complete Gencon's projects.

The Commission recognized that although Carlos and his wife, Paul and his assistant, and the countertop crew "did not take long to complete" their work, that work "was still required on more than half of Gencon's contracts" in the ten months preceding Perez's injuries. Indeed, Lemus testified that for as long as he had worked for Gencon, whenever "we need extra help, the boss calls extra people." He said that Johri did so "[r]egularly." Because the "record contains credible evidence that supports" the Commission's factual findings, *Hoffman*, 50 Va. App. at 211-12, we affirm the Commission's determination that Gencon had three or more employees "regularly in service," Code § 65.2-101, at the time of the accident.

The Fund counters that the subcontractor employees needed to meet the three-employee threshold were present only for a very short time on any one project. But that does not matter.

- 7 -

As we said in *Cotman*, the "statute has been construed to mean that any person hired by the employer to work in the usual course of the employer's business is an 'employee' under the Act *regardless of how often or for how long* he may be employed." 4 Va. App. at 258 (emphasis added); *see also Smith v. Hylton*, 14 Va. App. 354, 356 (1992) (same). An employer may not "evade liability under the Act," *Smith v. Weber*, 3 Va. App. 379, 381 (1986), by regularly structuring the work to engage three or more employees who work for only a short time on each job. *Cf. Mod. Trailer Sales of Ariz., Inc. v. Indus. Comm'n*, 498 P.2d 556, 560 (Ariz. Ct. App. 1972) ("[W]here there is a scheme or plan or periodic need for extra short-term employees in the usual course of the business of the employer, then such extra short-term employees are to be counted in determining the presence of three or more employees regularly employed thus necessitating the securing of work[ers'] compensation insurance.").

*Ragland* is not to the contrary. The employer there "never had three employees before the [claimant] worked for him for a day and a half, and [the employer] did not have three employees afterwards." 59 Va. App. at 260. In this case, by contrast, the majority of Gencon's jobs regularly required three or more employees, even though there were not many days on which three or more employees were present at the jobsite. Gencon "is considered to have 'regularly in service' three or more employees" because "'the recurring periods of employing' three individuals is 'the rule and not the exception.'" *Hoffman*, 50 Va. App. at 210 (quoting *Osborne*, 36 Va. App. at 96).

"The number of persons used to carry out the established mode of performing the work of the business is determinative even though the work may be recurrent instead of constant." *Cotman*, 4 Va. App. at 259. The record supports the Commission's conclusion that Gencon regularly needed the subcontractors' employees to perform its bathroom, kitchen, and basement remodeling. So the Commission properly considered those workers to be statutory employees of

- 8 -

Gencon under the company's established mode of performing its business. Since that was Gencon's regular and recurrent practice, it does not matter "how often or for how long" each of the subcontractors' employees was present at a jobsite. *Id.* at 258.

CONCLUSION

Because there is credible evidence in the record to support the Commission's findings that Gencon regularly employed three or more employees and that its established mode of business required doing so, we will not disturb the Commission's award.

*Affirmed.*