COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Annunziata
Argued at Richmond, Virginia


UNINSURED EMPLOYER'S FUND
                                           OPINION BY
v.         Record No. 1249-97-2      JUDGE JERE M. H. WILLIS, JR.
                                         JANUARY 6, 1998
RONALD CLARK
and
INDEPENDENT REPLACEMENT SERVICES


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Christopher D. Eib, Assistant Attorney
                General (Richard Cullen, Attorney General;
                Richard L. Walton, Jr., Senior Assistant
                Attorney General; John J. Beall, Jr., Senior
                Assistant Attorney General, on brief), for
                appellant.

                No brief or argument for appellees.


        On appeal from a decision of the Workers' Compensation

Commission awarding benefits to Ronald Clark, the Uninsured

Employer's Fund (the Fund) contends that the commission erred:

(1) in ruling that Clark was not an independent contractor; (2)

in holding Independent Replacement Services (IRS) liable for

injuries sustained during work not performed as part of its trade

or business; (3) in assuming jurisdiction of the claim; and (4)

in awarding Clark temporary total disability benefits without

sufficient evidence of a continuing disability.  We disagree and

affirm the award of the commission.

                                I.

        Under familiar principles, we view the evidence in the light

most favorable to the party prevailing below.  The commission's

findings of fact will be upheld on appeal if they are supported by credible evidence. <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488-89 (1989).

On January 18, 1996, Clark broke his ankle when he fell or jumped from a roof onto a pile of snow-covered debris. He filed a claim for benefits on February 5, 1996, naming IRS as his employer. On behalf of T.L.C. Repairs and Replacements (TLC), Lloyd Harrington filed an "Employer's First Report of Accident" asserting that Clark was his partner.

Jerry Lee Sims testified that he was the president of IRS, which subcontracts construction projects. He stated that IRS's only other employee was his wife, who is corporate vice-president. Sims testified: (1) that Clark was working with Harrington, (2) that he never directly paid Clark, and (3) that he never directed Clark's activities. Sims explained that he delivers supplies to a work site and employs a sub-subcontractor to perform the work. IRS pays its sub-subcontractors each Friday for work completed, deducting money for their rental of IRS equipment.

Harrington testified that in the name of TLC he held a business license from Chesterfield County, but that he worked exclusively as a sub-subcontractor for IRS. He stated that Clark had worked for him previously as an hourly employee, but had quit. In the fall of 1995, he offered Clark "half of what . . . I made after everything was taken care of," "if he worked on the

job." According to Harrington, he would cash a check received from IRS and deduct operating expenses, which included employee wages and gas. He would divide what was left between himself and Clark.

Clark testified that Harrington hired him eight months prior to his accident. He stated that he was paid in cash each Friday, at a rate of $15 per hour. He testified that typically, he and Harrington would go to Sims' house in the morning, get a work order and go to a job site, using a truck and tools provided by IRS.

On occasion, a general contractor would instruct Harrington to do additional work. On those occasions, Harrington would perform the work without a job order from IRS, but would send the paper work to IRS, which would bill the general contractor and pay TLC.

On January 18, 1996, a general contractor asked Harrington to roof an addition to a house on which TLC had worked previously through IRS. Clark sustained his injuries on this job. Harrington testified that Sims had not directed him to do this job. However, TLC followed usual procedure and performed the work without a work order. TLC followed usual billing procedure and was paid by IRS.

After the accident, Clark received medical treatment for his injury from Dr. Steven H. Jones. On June 19, 1996, Dr. Jones reported that Clark was "unable to do roofing work because of the

limited motion that prevents him from squatting, particularly on a pitched roof.  There are other activities that he could do, so he's qualified to do altered work."  On November 6, 1996, Dr. Jones wrote:  "I have not seen Mr. Clark since June, so I do not know if he is qualified at this time to do his regular duties or not."

The deputy commissioner dismissed Clark's application, holding that he was an independent contractor.  The full commission reversed the decision of the deputy commissioner, ruling that Clark had sustained his injury while a statutory employee of IRS.

II.

The Fund contends that the commission erred in holding that Clark was an employee.  It contends that Clark was Harrington's partner.

We cannot conclude as a matter of law that Clark and Harrington were partners.  The evidence does not prove as a matter of law that Harrington and Clark associated to carry on a roofing business as co-owners for profit.  See Code § 50-6. Although Harrington testified that he approached Clark about forming a partnership, Clark denied the existence of a partnership and testified that Harrington hired him and paid him wages.  Moreover, Harrington conducted his business through TLC, an entity in which Clark held no interest.

While Clark's receipt of a share of the profits suggested a

partnership, no such inference can be drawn if his receipt of a percentage of the net proceeds amounted to "employee wages." See Code § 50-7(4)(b); Robinson v. Allen, 85 Va. 721, 726, 8 S.E. 835, 837-38 (1889). Although Harrington testified that he and Clark agreed to divide any net proceeds received from their work with IRS, Clark testified that each Friday, Harrington paid him a wage based upon the number of hours that he worked. Furthermore, Harrington admitted that Clark received a share of, or interest in, the proceeds only if he worked.

The Workers' Compensation Act applies to the contractual relationship between employer and employee. Therefore, we must decide whether Clark was an "employee." "The elements of an employment relationship are: (1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action. The most important of these is the element of control." Behrensen v. Whitaker, 10 Va. App. 364, 366, 392 S.E.2d 508, 509 (1990) (citation omitted). The first three elements "are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control." Stover v. Ratliff, 221 Va. 509, 512, 272 S.E.2d 40, 42 (1980). Thus, "[o]ne is an employee of another if the person for whom he or she works has the power to direct the means and methods by which the work is done." Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 4, 427 S.E.2d 428, 430 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994)

- 5 -

(citation omitted).

Credible evidence supports the commission's finding that Clark was TLC's employee.  While Harrington's and Clark's testimony differed concerning whether Clark was hired, and the basis of his payment, the evidence supports the conclusion that Harrington retained the power to control the means and methods by which Clark performed his work.

Harrington obtained work orders.  He transported Clark to the work site, thereby controlling when, where and how long Clark worked.  He supplied Clark with the equipment and materials necessary to perform the work.  Although Clark was a "very good" roofer, Harrington exercised control by sometimes "tell[ing] him to do something this way or that way."

### III.

The Fund contends that the commission erred in holding IRS liable.  It argues the work being performed at the time of Clark's injury was not part of the "trade, business or occupation" of IRS.  It argues that because the general contractor directly commissioned the work to be performed by TLC, IRS was not a statutory employer pursuant to Code § 65.2-302.

Deciding what constitutes the "trade, business or occupation" of an entity is a mixed question of law and fact. Henderson v. Central Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987).  Code § 65.2-302 imposes upon a subcontractor who sub-subcontracts work liability for any compensation which the

- 6 -

subcontractor would have been liable to pay had an injured worker been employed directly by the subcontractor.  See Sykes v. Stone & Webster Eng'g Corp., 186 Va. 116, 121-22, 41 S.E.2d 469, 471-72 (1947).  However, that liability is predicated upon a determination that the sub-subcontractor was engaged in the "trade, business or occupation" of the subcontractor. Code § 65.2-302.

Liability under Code § 65.2-302 depends also upon a showing that the subcontractor was in privity with the sub-subcontractor who employed the claimant.  We conclude that such privity existed between IRS and TLC and that TLC, the sub-subcontractor, was engaged in the trade, business or occupation of IRS.

TLC worked exclusively for IRS and routinely completed jobs for general contractors without a work order from IRS.  IRS then billed the general contractor and paid TLC.  Thus, on January 18, 1996, TLC was performing work for IRS when it undertook on order of the general contractor to roof a building on which it had worked previously for IRS.  TLC performed the work and was paid by IRS.

The dealings between the general contractor and TLC were a matter of effective and efficient communication, not contractual negotiations.  The customary practice of the parties permitted TLC to perform work upon direct order from the general contractor without stopping work to procure an additional work order.  IRS adopted this practice both by paying TLC and by billing the

general contractors.  Thus, the roofing work performed by Clark as an employee of TLC was a part of the trade or business of IRS, and IRS was Clark's "statutory employer" under Code § 65.2-302.

The Fund contends that the commission lacked jurisdiction to entertain Clark's claim because IRS did not employ three employees. We disagree.

The purpose of the Workers' Compensation Act is to protect "employees." See Rust Eng'g Co. v. Ramsey, 194 Va. 975, 980, 76 S.E.2d 195, 199 (1953). However, Code § 65.2-101 exempts certain employers from liability under the Act by excluding from its definition of "employee," "[e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." (Emphasis added).

Sims admitted that he and his wife, as corporate officers of IRS, were employees. See Code § 65.2-101. Because Clark was IRS's employee for purposes of determining liability, he was also its employee for purposes of determining the applicability of the Act. See Smith v. Weber, 3 Va. App. 379, 381, 350 S.E.2d 213, 214 (1986). Therefore, jurisdiction of his claim lay properly with the commission.

V.

Finally, the Fund contends that the commission erred in awarding Clark continuing temporary total disability benefits. It argues that Clark failed to prove a continuing disability.

> There is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time. To the contrary, a party seeking compensation bears the burden

> of proving his disability and the periods of that disability.

Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149 (1997).

Dr. Jones reported on June 19, 1996, that Clark lacked the capacity to install roofs. However, he released Clark for "altered work." On November 6, 1996, Dr. Jones wrote that he could not determine whether Clark was able to return to his regular duties because he had not seen Clark since June, 1996. Clark explained that he had been unable to schedule a visit with Dr. Jones, because Dr. Jones would not treat him further until his bills were paid. Clark testified that he remained unable to wear regular shoes because of pain that "aches like a toothache," and explained that he was able to stay on his feet for only a couple of hours at a time on flat surfaces.

This evidence supports the commission's award of benefits. Accordingly, the award is affirmed.

Affirmed.
