COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales, and Powell


SHERMAN & SHERMAN PROPERTIES

v.      Record No. 1900-10-2

PETER L. LONG                                    MEMORANDUM OPINION[*] BY
                                                 JUDGE RANDOLPH A. BEALES
PETER L. LONG                                    APRIL 12, 2011

v.      Record No. 1940-10-2

SHERMAN & SHERMAN PROPERTIES AND
  UNINSURED EMPLOYER'S FUND


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Cathleen P. Welsh; Lenhart Obenshain PC, on briefs), for
            Sherman & Sherman Properties.  Sherman & Sherman Properties
            submitting on briefs.

            (Edmund R. Michie, on briefs), for Peter L. Long.  Peter L. Long
            submitting on briefs.

            (Thomas G. Bell, Jr.; Timberlake, Smith, Thomas & Moses, P.C.,
            on brief), for Uninsured Employer's Fund.  Uninsured Employer's
            Fund submitting on brief.


        Peter Long (claimant) was awarded compensation under the Workers' Compensation Act

("the Act") based on an accident that occurred when he fell from a ladder on April 6, 2006, while

he was working for Sherman & Sherman Properties (Sherman Properties).  Sherman Properties

appeals from the Workers' Compensation Commission's (the commission) opinion, arguing that

the commission erred in finding that claimant was an "employee" under the Workers'

Compensation Act and in finding that Sherman Properties was an "employer" under the Act.

─────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant appeals that portion of the commission's opinion finding that he was not entitled to temporary total disability benefits after August 10, 2007. After reviewing the record and the parties' arguments, we find that the commission did not err on the issues raised by either of the parties in the appeals before us here.

## I. Claimant as an Employee of Sherman Properties

The commission found that claimant was an employee[1] of Sherman Properties. Sherman Properties argues that the commission erred because claimant was an independent contractor – not an employee.

Whether a person is an employee under the Act presents a mixed question of fact and law. See Baker v. Nussman & Cox, 152 Va. 293, 298, 147 S.E. 246, 247 (1929). Therefore, while we review the evidence on this issue in the light most favorable to claimant, as the party who prevailed on this issue before the commission, see Uninsured Emplr's. Fund v. Clark, 26 Va. App. 277, 280, 494 S.E.2d 474, 475 (1998), we review the legal principles involved in this assignment of error *de novo*, see Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005).

## A. Background

Sherman Properties owned several pieces of real estate that it either rented or put up for sale. Some of these properties would require maintenance or renovation. Ben Sherman, a

---

[1] The commission discussed whether claimant here might be a "casual employee" engaged in the employer's usual course of business. Decades ago, the Supreme Court found that "casual employees" who are engaged in the "usual course of business" of an employer are "employees" under the Act. Hoffer Bros., Inc. v. Smith, 148 Va. 220, 229-30, 138 S.E. 474, 477 (1927). Sherman Properties on appeal essentially challenges the commission's finding that claimant was an employee – not whether he is a *casual* employee. Therefore, for purposes of this appeal, whether claimant was a "casual employee" –  as opposed to an "employee" – is not relevant to our analysis. The question raised in this appeal concerns whether claimant was an employee in the usual course of Sherman Properties' business or whether claimant's working relationship with the company was that of an independent contractor.

partner in Sherman Properties, periodically hired claimant to do various "basic laborer" jobs around the real estate properties owned by the company.

Claimant had previously worked as an hourly employee at another business owned by the Sherman family, W.A. Sherman, Inc. Sherman generally paid claimant at the same hourly wage that W.A. Sherman, Inc., had paid claimant. Sherman paid claimant either in cash or by check drawn on a Sherman Properties account. Claimant testified that the only contract work that he did from Sherman Properties involved the building of a retaining wall, and he received two "contract checks" for that project. Claimant also testified that he never received a 1099 tax form from Sherman Properties until after his workplace accident on April 6, 2006. Sherman Properties could produce only two 1099 forms that allegedly were sent to claimant – a handwritten form for 2005 and a typed form for 2006.

The parties never signed a written contract about their working relationship. At the conclusion of a task, claimant would approach Sherman and tell him how long it took to complete the task. Sherman would occasionally say that the task took too long. In such cases, he would pay claimant less money than was indicated by the actual number of hours that claimant had worked on the job. In his testimony, Sherman did not express any concern about claimant suing him for a breach of a contract as an independent contractor could do.

Sherman checked up on claimant's work and occasionally told him to do the job differently. Although Sherman did not specifically tell claimant how to do his jobs, the nature of his work – digging trenches and cleaning out basements -- did not require much oversight. On occasion, however, Sherman had told claimant that he was doing the task incorrectly and would instruct claimant on how it was supposed to be done. Sherman provided most of the tools and materials for the jobs done by claimant, and he allowed claimant to check out the tools from W.A. Sherman's warehouse in order to complete some tasks. In his work for Sherman

- 3 -

Properties, when claimant would complete a task, or be near to completion, Sherman would occasionally ask claimant to begin working on a new task.

B.  "Employee" under the Act

The commission found that claimant was an employee engaged in the "usual course of business" for Sherman Properties.  Sherman Properties argues that claimant was an independent contractor – not an employee under the Act.  We find that claimant was an employee of Sherman Properties.

No "'hard and fast rule'" exists for determining if a person is an employee of a company as opposed to an independent contractor.  Creative Designs Tattooing Assocs. v. Estate of Parrish, 56 Va. App. 299, 308, 693 S.E.2d 303, 308 (2010) (quoting Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 105-06, 184 S.E. 183, 184 (1936)).  The label that the parties put on their relationship is not controlling.  Virginia Employment Comm'n v. A.I.M. Corp., 225 Va. 338, 347, 302 S.E.2d 534, 540 (1983).  Instead, four criteria are generally reviewed when a court is asked to determine if a person is an "employee" under the Act:  "'(1) [s]election and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action.'"  Dillon Constr. & Accident Fund Ins. Co. of Am. v. Carter, 55 Va. App. 426, 430, 686 S.E.2d 542, 544 (2009) (quoting Crowder v. Haymaker, 164 Va. 77, 79, 178 S.E. 803, 804 (1935)) (alteration in original).  Virginia courts have held previously that "the [potential] power of control is the determining factor."  A.I.M. Corp., 225 Va. at 347, 302 S.E.2d at 539-40.  When considering the fact of potential power of control, "the nature of the work" is important.  Purvis v. Porter Cabs, Inc., 38 Va. App. 760, 770, 568 S.E.2d 424, 429 (2002).

Here, claimant had previously worked as an employee of another Sherman family business, at the same hourly wage that he worked for Sherman Properties.  Ben Sherman checked up on claimant's work and occasionally told him to do the work differently.  Although

- 4 -

Sherman did not specifically tell claimant how to dig a trench or clean out a basement or rip plaster off a wall, the nature of this work did not require that level of control by an employer. Instead, Sherman Properties controlled claimant's work as it would any other employee doing similar jobs. Sherman Properties provided most of the tools and all of the materials that claimant would need to complete his tasks – either directly or by allowing him to use the tools owned by the family's other business, W.A. Sherman, Inc. The parties did not have a written contract, and Sherman Properties docked claimant's pay unilaterally if the job took more hours than expected. Based on all these facts, viewed in the light most favorable to claimant as the party who prevailed before the commission, we find as a matter of law that, under the Act, claimant was an employee of Sherman Properties – not an independent contractor.

In addition, claimant's work for Sherman Properties was part of the "usual course of business" of that company. Code § 65.2-101(1)(a) (defining "employee" under the Act). Sherman Properties bought and sold real estate, as well as retaining some properties that it rented. Sherman Properties constantly improved the properties that it owned, as evidenced by the number of jobs that claimant and others did for the company over several years. Although Sherman Properties claims it was simply a rental agency, when the evidence is viewed in the light most favorable to claimant, who prevailed on this issue before the commission, the record contains sufficient evidence to conclude that the company was engaged both in renting out properties that it owned and also in renovating and selling properties that it had bought. As renovation was part of the company's usual course of business, and claimant was engaged in the renovation of these properties, he was clearly employed in the "usual course of business" under the Act.[2]

---

[2] The "pool hall" where claimant was working when he fell from the ladder was one of the properties that Sherman Properties was renovating in preparation for sale. Sherman Properties evidently sold this "pool hall" prior to the hearing before the deputy commissioner.

## II.  Sherman Properties as Employer of Claimant

### A.  Background

Ben Sherman and his brother created Sherman Properties in 1990.  At the time of claimant's accident in 2006, the company owned approximately sixteen pieces of real estate with thirty-six rental units.  The company had previously owned fourteen other properties that it had renovated and then sold.  Ben Sherman claimed in his testimony before the deputy commissioner that, by 2006, the company was operating without any employees.

At the time of claimant's accident, the Sherman family also owned W.A. Sherman, Inc., a corporation with more than three employees.[3]  Sherman Properties continually used W.A. Sherman for a significant portion of the work on its properties.  Claimant worked alongside several W.A. Sherman employees while working for Sherman Properties – occasionally helping them with their tasks and occasionally asking for assistance from them.  Claimant would use tools provided by W.A. Sherman to perform his work.

W.A. Sherman billed Sherman Properties for work on the properties using the hourly wages of its employees and the material costs of the supplies needed for the work.  Sherman Properties also paid W.A. Sherman for doing its administrative work and its accounting.  Sherman Properties used W.A. Sherman's telephone number as its contact number for renters, and Sherman Properties apparently had no other telephone number for its business.  Sherman Properties owned the building that housed W.A. Sherman, Inc.

---

[3] Sherman Properties has never argued that W.A. Sherman, Inc., had fewer than three employees.  During the proceedings before the deputy commissioner, W.A. Sherman acknowledged that it fell within the jurisdiction of the Act.  Some time after claimant's accident, the Sherman family sold W.A. Sherman, Inc.

B.  Three or More Employees

Under Code § 65.2-101, the definition of "employee" for purposes of the Act excludes from the Act's coverage any employees who work for an employer that "has regularly in service less than three employees."  Therefore, if Sherman Properties regularly employed less than three people, it was not liable under the Virginia Workers' Compensation Act for claimant's injuries. The commission found, however, that Sherman Properties regularly "used the employees of W.A. Sherman Company, Inc. to maintain and improve its properties" and concluded that Sherman Properties was liable for claimant's injuries under the Act.[4]  Sherman Properties argues that it did not fall under the jurisdiction of the Act because it did not regularly employ three or more people.

An employer has "the burden of producing evidence that it had less than three employees regularly employed in Virginia."  Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 3, 427 S.E.2d 428, 430 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994).  "[P]art-time as well as full-time employees 'regularly in service' must be considered . . . ."  Cotman v. Green, 4 Va. App. 256, 259, 356 S.E.2d 447, 448 (1987).  "Whether an employer regularly employs fewer than three employees is a factual determination . . .," Hoffman v. Carter, 50 Va. App. 199, 211, 648 S.E.2d 318, 324 (2007), which is binding on an appellate court unless plainly wrong.

Code § 65.2-302(A) states:

> When any person (referred to in this section as "owner")
> undertakes to perform or execute any work which is a part of his
> trade, business or occupation and contracts with any other person
> (referred to in this section as "subcontractor") for the execution or
> performance by or under such subcontractor of the whole or any
> part of the work undertaken by such owner, the owner shall be
> liable to pay to any worker employed in the work any

---

[4] In addition to finding that Sherman Properties was responsible under the Act for claimant's injury, the commission also fined Sherman Properties for failing to carry workers' compensation insurance.  See Code § 65.2-805.

> compensation under this title which he would have been liable to
> pay if the worker had been immediately employed by him.

Therefore, under Code § 65.2-302(A), when an owner contracts with another party to perform work that is a part of the owner's regular course of business, that owner then becomes liable for the employees of the other party who do that work – just as if the owner had hired them directly.

The commission applied Code § 65.2-302(A) here to find that, for purposes of the Act, Sherman Properties "employed" the employees of W.A. Sherman, Inc., who worked in the regular course of business of Sherman Properties. Therefore, the commission concluded, Sherman Properties had failed to prove that it had less than three employees. Sherman Properties argues that W.A. Sherman was engaged in a different business, so its employees were not employees of Sherman Properties. However, this argument misstates the law in this area. The test is whether the employees of W.A. Sherman are engaged in the regular course of business of Sherman Properties. The test does not require that the businesses themselves be engaged in exactly the same type of work. See Hoffman, 50 Va. App. at 212, 648 S.E.2d at 325 (employees of a subcontractor "are treated the same as" the contracting business' "own employees"); Turf Care, Inc. v. Henson, 51 Va. App. 318, 657 S.E.2d 787 (2008) (finding that an employee of a subcontractor was acting as the employee of the contracting business when he was injured).

Sherman Properties claimed to have no employees, yet it bought, sold, and rented real estate on a continual basis. It also regularly maintained and renovated the real estate that it owned. While Ben Sherman claimed that it had no regular employees on a traditional payroll, Sherman Properties nevertheless conducted its business primarily through the employees of another Sherman family-owned business, W.A. Sherman Inc. W.A. Sherman did a significant amount of the maintenance and renovation work for Sherman Properties. W.A. Sherman did not appear to have contracts for the jobs that it did for Sherman Properties. See Clark, 26 Va. App. 277, 494 S.E.2d 474 (finding it important that the subcontractor worked exclusively for IRS,

- 8 -

routinely without a work order, and concluding that Clark's work for the subcontractor made Clark a "statutory employee" of IRS). Sherman Properties' regular business, as it involved rental properties, also involved answering telephone calls from renters and doing accounting – both functions performed by W.A. Sherman employees.

Based on all these facts, viewed in the light most favorable to claimant as the party who prevailed before the commission, we find that the commission had sufficient evidence to conclude that W.A. Sherman employees were engaged in the regular business of Sherman Properties. As such, the W.A. Sherman employees were statutory employees of Sherman Properties at the time of claimant's accident, and so Sherman Properties fell under the jurisdiction of the Act. See Cinnamon v. Int'l Business Machines Corp., 238 Va. 471, 475, 384 S.E.2d 618, 619 (1989) (the purpose of the Act is to cover all employees who perform the work of the "owner," whether they work directly for him or through a subcontractor).

We find Turf Care, Inc., 51 Va. App. 318, 657 S.E.2d 787, instructive here. In that case, a real estate company, W.F., contracted with Turf Care to perform lawn work in one of its housing developments that W.F. had previously done itself. Id. at 332-33, 657 S.E.2d at 794. After signing the contract, W.F. retained "oversight of the quality of Turf Care's work and maintained involvement in the day-to-day operations of Turf Care on W.F., Inc. property." Id. at 333, 657 S.E.2d at 794. Henson, an employee of Turf Care, was injured while working at the housing development. Id. at 328, 657 S.E.2d at 791. Although the commission found that Henson was not an employee of W.F. for purposes of the Act, this Court reversed that finding based on the provisions of Code § 65.2-302(A). Id. at 334, 657 S.E.2d at 794.

Here, as in Turf Care, Inc., Sherman Properties contracted with W.A. Sherman to perform the upkeep and day-to-day operations of its business. W.A. Sherman's employees did the bookkeeping and administrative work for Sherman Properties. W.A. Sherman's employees

- 9 -

did maintenance and renovation work on the real estate owned and sold by Sherman Properties. W.A. Sherman's employees worked beside claimant, and they assisted each other in their work. Although Sherman Properties claimed it had no employees, as explained in Turf Care, Inc., a business "cannot subcontract all of its trade, business and occupation and escape liability of the Act." Id. at 333, 657 S.E.2d at 794. Therefore, W.A. Sherman's employees are counted as employees of Sherman Properties for purposes of the Act, and it is undisputed that W.A. Sherman had at least three employees. These employees, in addition to claimant, put Sherman Properties under the definition of an "employer" found in the Act. Accordingly, for the reasons stated herein, the commission did not err in finding that Sherman Properties fell under the jurisdiction of the Act.

### III. Claimant's Appeal – Temporary Total Disability

### A. Background[5]

On April 6, 2006, claimant fell from a ladder as he was attempting to rip pipe and drywall from the wall in a building being refurbished by Sherman Properties. He broke five ribs and several vertebrae.

Dr. Randolph Merrick, who treated claimant after the accident, released him to light-duty work on August 14, 2006. Claimant continued to see Dr. Merrick after that date. The doctor noted in his records after August 14, 2006, that claimant's pain was "fairly well maintained" by pain medication. By April 26, 2007, claimant was becoming "more active" and trying to find work. Claimant did find some work – for example, helping his neighbor with his yard. However, on August 10, 2007, in response to questions from claimant's attorney, Dr. Merrick

---

[5] The commission found that Long was not temporarily totally disabled after August 10, 2007, a finding of fact. See Hoffman, 50 Va. App. at 209, 216, 648 S.E.2d at 323, 327. The evidence on this issue, therefore, is viewed in the light most favorable to Sherman Properties, as the party who prevailed before the commission on this issue. Clark, 26 Va. App. at 280, 494 S.E.2d at 475.

wrote that claimant "has severe chronic pain and is maintained on opiate pain medication. I have advised [claimant] to apply for total disability. He is only trained for blue collar work which he cannot d[o]."

The commission awarded claimant benefits from the date of the accident through August 14, 2006, when Dr. Merrick released him for light-duty work. However, the commission found that claimant did not market his residual capacity, so he was not entitled to benefits after August 14, 2006. Although claimant argued that he was temporarily totally disabled as of August 10, 2007 (and continuing), based on the response from Dr. Merrick, the commission found that the evidence was insufficient to prove that such a disability existed as of that date.

### B. Evidence of Temporary Total Disability

Claimant argues that the medical evidence regarding his continuing disability is uncontradicted because only Dr. Merrick's medical records addressed this issue. [6] As claimant's argument is based on a factual finding and the sufficiency of the evidence to support that finding, we cannot reverse the commission's decision on this issue unless we find that there was no credible evidence to support its finding -- and, therefore, find that the commission was plainly wrong. In short, claimant must prove based on this record that, as a matter of law, he was temporarily totally disabled after August 10, 2007. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970) ("Unless we can say as a matter of law that the evidence submitted by [an appealing claimant] was sufficient to sustain his burden," the commission's finding of fact is binding on the Court.); Uninsured Employer's Fund v. Keppel, 1 Va. App. 162, 165, 335 S.E.2d 851, 852 (1985) ("[I]f there is no credible evidence to support a finding of fact, the issue becomes sufficiency of the evidence as a matter of law for us to decide.").

---

[6] The hospital's records from the day of the accident were also included in the record.

Claimant is correct that the evidence regarding his disability after August 10, 2007, came only from Dr. Merrick, his treating physician. However, the question before the commission was not who presented the most evidence. The question actually before the commission was whether claimant had met his burden by presenting enough credible evidence to prove that he was temporarily totally disabled as of August 10, 2007. See Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 42, 422 S.E.2d 165, 171 (1992) ("A claimant still has the burden of proving his entitlement to benefits . . . ."). The commission found that Dr. Merrick's statement that claimant could not do "blue collar" work and that claimant should apply for disability benefits was not enough evidence to meet this burden.

> The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding. In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.

Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). The fact that the commission found claimant was temporarily totally disabled up to August 14, 2006, did not create a presumption that he remained disabled "for an indefinite period of time." Marshall Erdman & Assocs. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149-50 (1997) ("To the contrary, a party seeking compensation bears the burden of proving his disability and the periods of that disability.").

Although only Dr. Merrick's opinions were presented to the commission, this evidence was not "uncontradicted." The doctor, to some extent, was inconsistent in the views that he expressed. His notes indicated that claimant was improving and even able to do some work, yet he then shortly thereafter recommended that claimant apply for temporary total disability benefits. As a result, Dr. Merrick's comment that he advised claimant to apply for total disability benefits, suggesting that he believed claimant was totally disabled, was not so

- 12 -

persuasive that the commission erred as a matter of law when it denied claimant's request for temporary total disability benefits.

In addition, Dr. Merrick did not state that claimant was totally disabled. He simply stated in response to a question from claimant's attorney that he had advised claimant to apply for total disability benefits. Although he explains that claimant cannot do the work that he did formerly – "blue collar work" – the doctor does not explain why the inability to do this work is a total disability. See Code § 65.2-500(A). Claimant had completed three years of college coursework, so the commission could conclude that he was able to do other work besides the more physically demanding "blue collar work."

Dr. Merrick did not explicitly state that, in his medical opinion, claimant is totally disabled. The doctor did not explain how claimant's condition had changed since August 14, 2006, when the doctor released him to do light-duty work. The doctor also did not explain the limitations on claimant's ability to work, except to say that he could not do "blue collar work." As a result, we cannot find that the commission erred when it found that claimant's evidence did not prove that he was entitled to temporary total disability benefits after August 10, 2007.

IV. Conclusion

We find that the commission did not err in this case. Claimant was entitled to an award of benefits pursuant to the Act because he was an employee of Sherman Properties at the time of the accident, and Sherman Properties was an employer subject to the provisions of the Act at the time of the accident. However, claimant did not prove, as a matter of law, that he was temporarily totally disabled after August 10, 2007. Therefore, we affirm the commission's award of benefits to claimant and also affirm the commission's denial of temporary total disability benefits to claimant after August 10, 2007.

Affirmed.

- 13 -