# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and AtLee
Argued at Fredericksburg, Virginia


CHRISTINA MARTINKA

                                                 MEMORANDUM OPINION* BY
v.        Record No. 1990-22-4           JUDGE MARY GRACE O'BRIEN
                                                          JULY 16, 2024
PHI GROUP, INC., ET AL.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Christina Martinka, *pro se*.

W. Thomas Chappell (Brian L. Sykes; Woods Rogers Vandeventer
Black, LLP, on brief), for appellee.


Christina Martinka challenges a Workers' Compensation Commission's judgment awarding

her medical benefits for a back injury and total disability benefits from December 1, 2017 to

January 28, 2018.  Generally, she argues that the evidence proved she was entitled to total disability

benefits from November 29, 2017 through September 11, 2018, and to continuing partial disability

benefits beginning on September 12, 2018.  She contends the Commission considered improper

evidence from PHI Group, Inc. ("PHI" or "employer") and erroneously excluded evidence that she

submitted after the hearing.  She also maintains that the Commission's series of biased and partial

rulings deprived her of due process.  Finally, she claims entitlement to "reinstatement, back pay, and

other appropriate relief" because PHI denied her medical treatment and wrongly terminated her

employment after she asserted her rights under the Workers' Compensation Act.  Finding no error,

we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

"On appeal from a decision of the Commission, 'the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below,' on the issues before us, the employer." *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)).

I. Factual Background

Martinka, a flight paramedic for PHI, injured her back on November 29, 2017 while lifting a patient into a helicopter. She first sought medical attention at an Urgent Care facility on December 1, 2017, where physician's assistant Gongqiao Zhang instructed that she remain off work until a reassessment on December 6. At that follow-up appointment, Zhang again held Martinka from work and referred her to an orthopedist. Although Martinka made an appointment for early January 2018 with orthopedist Dr. David Cohen, she did not see him until June 2018 due to insurance "authorization problems."

Meanwhile, at the end of January 2018, Martinka began online and in-person classes at Harvard University. Once a week during the spring 2018 semester, she drove over an hour to an airport to take a 45-minute flight to Boston. She carried a notebook, laptop, and backpack while travelling. In a deposition, Martinka stated that she had dedicated an average of 30 hours per week to school, including 9 hours of classwork and 20 or more hours of studying. At the hearing before a deputy commissioner, however, she said that she misunderstood the deposition questions. She denied spending 20 hours per week studying and claimed that from the time she left for Boston until the time she returned home each week was 30 hours. She confirmed that she took three classes per semester beginning in spring 2018 until she graduated in May 2021. The deputy commissioner admitted the deposition transcript as evidence to prove that Martinka "was participating in [30]

hours of schoolwork" weekly; he overruled Martinka's objection that the transcript should not be admitted because it was "not clear."

Martinka's first appointment with the orthopedist Dr. Cohen was on June 25, 2018. She reported continuous and worsening pain that had interfered with her sleep for the preceding seven months and was exacerbated by bending, lifting, or prolonged standing. A physical exam revealed a normal gait and range of motion but pain with flexion of the lumbar spine. Dr. Cohen recommended physical therapy and noted that Martinka could not take certain pain medications because of ongoing fertility treatments. He concluded that Martinka "should remain out of work until her next visit in 8 weeks."

When Martinka returned to Dr. Cohen on September 11, 2018, she reported that physical therapy had provided "some improvement." Martinka believed that she could return to work performing "sedentary duties such as teaching," so Dr. Cohen gave her "a return to work note in [that] respect." A nurse practitioner in Dr. Cohen's office wrote a note permitting Martinka to "carry[] out sedentary duties such as teaching" beginning September 12, 2018. The note provided that the work restriction "will last for a period of 6 weeks" and then "will be further evaluated." The note did not limit the number of days per week Martinka could work. She testified, however, that Dr. Cohen told her she could work only one or two days per week.

In September 2018, Martinka began teaching EMT classes one or two days per week, eight hours per day, and performed clerical work for a business that she and her husband operated. She claimed that riding in a car for more than an hour was painful, so she taught her classes online and took breaks when needed. The occasional in-person classes were "pretty tough." Martinka testified that she looked for "other teaching positions" but they "required a bachelor's degree," which she did not have at the time, or required "full time" employment, which was not within her work restrictions as she understood them. She did not apply for any other job.

In November 2018, Martinka was hospitalized with pneumonia for several days and then received follow-up care from her primary care physician, Dr. Marie Haley. In December 2018, she underwent an MRI of her lower back that showed "degenerative changes" but "without instability" or "joint asymmetry." On December 18, 2018, Dr. Cohen recommended lumbar injections but acknowledged that Martinka was still undergoing fertility treatments. He advised her to get the injections in spring 2019 if she was not pregnant, or just after delivery if she was. Dr. Cohen did not address Martinka's work status.

Martinka did not return to Dr. Cohen. She testified that he "never ordered the injections" and, in any event, would not administer them because they were outside his practice. Martinka denied that fertility treatments impacted her decision not to receive the injections. She claimed that she stopped seeing Dr. Cohen after the December 2018 appointment because he had "reached" the end of his "capability" in her case.

In February 2019, Martinka was hospitalized for unrelated eye pain and vision problems and was found to have a "pseudotumor cerebri." She did not receive treatment for her back injury while addressing the pneumonia, visual disturbances, or pseudotumor cerebri.

Martinka saw Dr. Haley for a physical exam on April 17, 2019. Dr. Haley noted that Martinka was suffering from "[d]isc herniation" and "tingling" on the right side. The appointment notes reflect that Martinka reported to Dr. Haley that she could not "do [her] paramedic job" but "can teach" and "needs to change position if sitting." Dr. Haley advised her to continue her exercise plan, try acupuncture, and consider seeking a "second opinion" from another orthopedist. Dr. Haley did not comment on or restrict Martinka's work capacity.

Martinka returned to Dr. Haley on September 4, 2019 with renewed complaints of back pain that worsened when "standing and teaching." Martinka reported that she could "walk fine" but remained unable to work as a flight paramedic. Dr. Haley prescribed lidocaine patches and referred

her to an orthopedist, Dr. Josef Simon.  Again, Dr. Haley's notes did not reflect any restriction on Martinka's work capacity.

Martinka saw Dr. Haley again on October 30, 2019 for stomach issues related to back pain medication.  She reported that acupuncture was "helping" her back pain and that she had been wearing a lumbar brace while teaching.  That day, Dr. Haley provided a letter stating that Martinka "can continue to work on a limited basis—I suggest 1-2 days a week—and limit lifting to 15 pounds."  In response to a later questionnaire, Dr. Haley stated that Martinka's back condition was caused by her November 2017 work injury, an opinion "based on [Martinka's] history" and an "[e]xam in 2019."

Martinka first saw Dr. Simon on January 10, 2020 and complained of back pain radiating down her leg with numbness and tingling.  She reported that she had been working but could not lift more than 15 pounds.  Dr. Simon ordered another MRI of Martinka's lower back and ultimately diagnosed "lumbar radiculopathy."  After a July 29, 2020 telemedicine visit, Dr. Simon wrote:

> Given her degree [of] pain with bending and lifting, I do not feel she can go back to active duty as an EMT at this time.  I would limit her to lifting less than 15 lbs.  She has been teaching a couple days a week and this is tolerable.  I would recommend that she continue with this until further notice.

At an October 2020 follow-up appointment, Dr. Simon recorded that Martinka's pain limited her ability to be as "active as she would like."  He discussed the possibility of a "partial discectomy" surgery and noted that Martinka wanted to proceed with it "after the new year."

II.  Proceedings Before the Commission

Martinka filed claims asserting compensable injuries to her lower back, buttock, right pelvis, and right leg occurring on November 29, 2017.  She sought lifetime medical benefits, temporary total disability benefits from the date of her injury to September 10, 2018, and temporary partial disability benefits beginning September 11, 2018.  At a hearing before the deputy commissioner, the

- 5 -

parties stipulated that Martinka had suffered a compensable injury to her lower back "with radiculopathy into her right buttocks and right leg." The parties also stipulated that Martinka earned $65,787.85 in the 52 weeks before her injury. Martinka proffered that her post-injury average weekly wage while teaching was $439.81. PHI would not stipulate to that amount, however, so the deputy commissioner agreed to hold the record open for 24 hours after the hearing for the parties to submit evidence on that issue.

The day after the hearing, Martinka submitted "screenshots" reflecting the courses she had taken each semester at Harvard. She claimed that she had to take three classes per semester to maintain health benefits through the university. She further asserted that, outside of travel time, she spent only 10 hours per week on her schoolwork; she admitted, however, that her schoolwork time increased to 20 hours per week when preparing for exams and assignment due dates. Because the deputy commissioner had left the record open only for evidence on Martinka's post-injury average weekly wage, he did not consider these submissions.

The deputy commissioner found that Martinka injured her lower back in the work accident and was unable to work from December 1, 2017 through January 28, 2018, when she started her spring semester of Harvard classes, and he entered an award of temporary total disability benefits for that period. Martinka did not appeal that determination.

The deputy commissioner also found that Martinka failed to prove any disability, either partial or total, for the period of October 13, 2018 through October 29, 2019. For all other requested periods, the deputy commissioner found that Martinka was partially disabled but forfeited any entitlement to compensation because she failed to market her residual work capacity. Martinka appealed these findings to the full Commission, arguing that her disability continued after January 28, 2018 and she had complied with all "marketing guidelines."

- 6 -

The Commission unanimously affirmed. It agreed with the deputy commissioner's finding that Martinka had "demonstrated some residual capacity beginning January 29, 2018," when she began travelling to and attending classes at Harvard. She did not "look for work," however, until September 12, 2018; therefore, the Commission held that she was not entitled to partial disability benefits from January 29, 2018 to September 11, 2018 because she had failed to adequately market her residual capacity.

Next, the Commission found that for the six weeks between September 12, 2018 and October 22, 2018, Dr. Cohen had not restricted her work capacity to one or two days a week and the restriction he did impose—"sedentary duties such as teaching"—could have changed had he known about Martinka's school workload. Thus, the Commission found that her work restrictions during that period were self-imposed and accompanied by insufficient marketing efforts.

Turning to the period between October 23, 2018 and October 29, 2019, the Commission affirmed that no medical evidence supported any disability, partial or total. Dr. Cohen had last commented on her work capacity on September 11, 2018, when he stated she could perform sedentary duties for six weeks, and Dr. Haley did not restrict her work capacity until October 30, 2019. Although Martinka was hospitalized for unrelated medical issues, no evidence showed that her back injury took her out of her work during this period, and the Commission would "not presume continuing disability."

Beginning October 30, 2019, the Commission found that Drs. Haley and Simon's restrictions limiting Martinka to one or two days a week were "unpersuasive as they were not based on a full understanding of [her] actual activity level." The Commission determined that Martinka was not limited in the days or hours she could work, only the type of work that she could perform. Because Martinka taught and did clerical work only two days per week without seeking other

employment, the Commission found that she had failed to market her residual capacity and was, therefore, not entitled to benefits.[1]

III. Appeal to this Court

On further appeal to this Court, Martinka asserts that the deputy commissioner[2] and the full Commission committed many "[s]ubstantive errors in both findings of fact[] and conclusions of law." She argues that the medical evidence proved that she consistently sought treatment for her back injury and other ailments. Thus, she contends that she was entitled to total disability benefits from the date of injury through September 11, 2018, and that she had no residual work capacity to market during that period. She also maintains that she was entitled to partial disability benefits beginning on September 12, 2018, at which point she used all residual work capacity by teaching one to two days per week. She asserts that she increased her school workload to obtain medical benefits from the school because PHI "illegally" hindered treatment authorization, which delayed her initial appointment with Dr. Cohen. Thus, she concludes that the Commission wrongly punished her by relying on her coursework to deny her benefits. In any event, she argues that the Commission should not have relied on her deposition testimony, which she claims was admitted

_____

[1] The deputy commissioner had found, as an alternative basis for its decision, that Martinka was not entitled to wage loss benefits because she unreasonably refused the steroid injections Dr. Cohen had prescribed. The Commission declined to consider this issue, however, given its finding that Martinka failed to market her residual work capacity. Likewise, that issue is not before us on appeal.

[2] Several of Martinka's assignments of error challenge the judgments of both the Commission and the deputy commissioner, who she refers to as the "Workers Compensation Court." We have jurisdiction to review a final decision from the Commission. Code § 17.1-405(2). By contrast, "a party aggrieved of a deputy commissioner's decision may seek review of that decision before the full Commission." *King William Cnty. v. Jones*, 65 Va. App. 536, 545 (2015), *aff'd on reh'g en banc*, 66 Va. App. 531 (2016). Thus, we lack authority to review the deputy commissioner's decision directly and do not consider Martinka's arguments to the extent they seek that relief.

- 8 -

improperly, and that she was entitled to benefits because PHI wrongfully terminated her after she asserted her rights under the Act.

ANALYSIS

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission[,] nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2005) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "The scope of a judicial review of the fact finding function of [the C]omission . . . is 'severely limited, partly in deference to the agency's expertise in a specialized field.'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Id.* (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

I. Disability from November 29, 2017 to December 1, 2017

Martinka argues that under Code § 65.2-509, her total disability benefits should have begun on November 29, 2017, the date of her injury, not December 1, 2017, when Zhang—the physician's assistant at Urgent Care—first excused her from work. She maintains that although she raised this issue in her written statement, the Commission did not address it. Accordingly,

- 9 -

she asks this Court to reverse the Commission's judgment and award her temporary total disability benefits beginning on November 29, 2017.

Other than medical benefits, an injured claimant is not entitled to compensation "for the first seven calendar days of incapacity resulting from an injury." Code § 65.2-509. Instead, "compensation shall commence with the eighth day of disability." *Id.* "If, however, such incapacity . . . continue[s] for a period of more than three weeks, then compensation shall be allowed from the first day of such incapacity." *Id.*

Martinka elides the distinction Code § 65.2-509 makes between "an injury" and the "resulting" incapacity or disability. It is uncontested that Martinka suffered a compensable injury on November 29, 2017. That fact, however, did not relieve Martinka of the burden of proving "the periods of [her] disability." *Donovan v. United Parcel Serv., Inc.*, 63 Va. App. 438, 445 (2014) (quoting *Marshall Erdman & Assocs. v. Loehr*, 24 Va. App. 670, 679 (1997)). Indeed, this Court does not presume a claimant is disabled simply because she has suffered a compensable injury. *Jalloh*, 77 Va. App. at 207. Here, the record establishes that Martinka reported continuing pain in the days following her injury, and Zhang excused her from work on December 1, 2017. Consequently, the medical evidence did not prove that her "resulting" incapacity began on November 29, 2017. Code § 65.2-509. Accordingly, the Commission did not err by holding that her temporary total disability benefits began on December 1, 2017.

II. Disability from January 29, 2018 to September 11, 2018

Martinka argues that the Commission erred by concluding that her total disability ended on January 28, 2018. She stresses that Zhang kept her out of work in December 2017, and Dr. Cohen did not release her to light duty until September 12, 2018. Thus, she concludes the medical evidence demonstrated that she was totally disabled during that period. We disagree.

- 10 -

"A party seeking workers' compensation bears the burden of proving [her partial or total] disability and the periods of that disability." *Jalloh*, 77 Va. App. at 207 (quoting *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018)). "The period of a claimant's disability is a question of fact" that is binding on appeal if "'supported by credible evidence.'" *Id.* (quoting *Vital Link*, 69 Va. App. at 64); *see also* Code § 65.2-706(A).

To demonstrate total disability, a claimant must prove that the compensable injury "effectually closed the labor market to" her. *Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 684-85 (1960). "A showing that [she] may not return to [her] former occupation is not such proof." *Id.* at 685. A partially disabled worker is presumed to be able to "continue working either on restricted duty or in an altogether new job." *King William Cnty. v. Jones*, 66 Va. App. 531, 541 (2016) (en banc) (quoting *McKellar v. Northrup Grumman Shipbuilding, Inc.*, 290 Va. 349, 357 (2015)). To receive compensation for a partial disability, the claimant must prove that she "suffered an actual economic loss in the labor market and did not merely lose the theoretical capacity to perform abstract job functions." *Id.*

Although "[t]he opinion of the treating physician is entitled to great weight" when determining whether a claimant has sustained her burden of proving a total or partial disability, the Commission is not bound to accept that opinion. *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011). "If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'" *Va. Nat. Gas, Inc. v. Tennessee*, 50 Va. App. 270, 279 (2007) (quoting *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02 (2006)).

The record supports the Commission's finding that Martinka was only partially disabled after January 28, 2018, when she began attending classes at Harvard. Her deposition testimony[3] established that once a week during the spring 2018 semester, she drove over an hour to the airport to take a 45-minute flight to Boston. She carried a notebook, laptop, and backpack while travelling and attended nine hours of classes per week. Martinka spent a total of 20 to 30 hours per week studying. That level of activity demonstrated that Martinka's injury did not "close[] the labor market to" her. *Barbour*, 201 Va. at 685. Rather, the effort she expended to travel, attend school, and study revealed a residual work capacity that could have been devoted to the workplace.

Nonetheless, Martinka argues that her hearing testimony rebutted her deposition testimony. She contends that the deposition questions confused her and that the 30 hours weekly she devoted to schoolwork included travel time. The deposition transcript, however, contains no ambiguity in the questions; nor is there any indication that Martinka did not understand the questions. She unequivocally claimed that she had 9 hours "of class work" and devoted 20 to 30 hours "to study" weekly. Based on the foregoing, the Commission rejected Martinka's hearing testimony. That credibility determination is not plainly wrong, so we must accept it. *McNamara v. Va. Emp. Comm'n*, 54 Va. App. 616, 625 (2009).

---

[3] Martinka argues that the Commission erred by considering the deposition transcript because admitting it was part of "a pattern of favoritism" and evidence of a biased tribunal. She insists that she was denied the opportunity to present "valid evidence" while PHI was "permitted to admit improper evidence," which violated her due process rights. Martinka did not present any of those constitutional arguments to the Commission. Rather, when PHI moved to introduce the deposition transcript, Martinka's only objection was that the transcript was "not clear." And in her written statement on review before the Commission, Martinka did not argue that the Commission could not rely on the deposition transcript. To the contrary, she cited the transcript to support her position. Accordingly, her appellate arguments challenging the Commission's reliance on the deposition transcript are not preserved for appellate review. Rule 5A:18.

Next, Martinka argues that the Commission erred as a matter of law by considering her Harvard workload when determining whether she was totally disabled before September 12, 2018. She insists that PHI violated Code §§ 40.1-28 and 65.2-603 when it "refused to provide medical treatments" in spring 2018, thereby delaying her appointment with Dr. Cohen. She maintains that PHI's actions forced her "to increase" her school workload so that she could qualify for medical benefits through her school. Accordingly, she argues that considering her school workload as evidence that she was not totally disabled unfairly penalized her for her employer's inappropriate action.

Whether PHI was at fault for the delay in Martinka's appointment with Dr. Cohen is a distinct question from whether Martinka retained any residual work capacity between January 29, 2018 and September 11, 2018. Martinka's physical ability to increase her workload to obtain health insurance benefits was highly probative of her disability level during that time period. Moreover, none of the authorities Martinka cites prevented the Commission from considering the evidence for that purpose. Code § 65.2-603, for example, requires employers to furnish medical attention for compensable injuries but includes no mechanism for excluding the evidence Martinka challenges here. Similarly, Code § 40.1-28 prohibits employers from requiring an employee "to pay the cost of a medical examination" as a condition of employment but does not limit the evidence that may be admitted at a hearing before the Commission. Martinka also cites the Commission's opinion in *Fleshman v. Checkers Check Cashing, et al.*, VWC No. 163-73-20, slip op. at 5 (Va. Workers Comp. Comm'n Sept. 25, 1995), which held that it would be unfair to "penalize the claimant" by denying her the ability to see her treating physician after she complied with the employer's inappropriate instruction not to see that physician. Nothing in *Fleshman* establishes a broad evidentiary rule that if an employer inappropriately denies medical

- 13 -

treatment, the claimant's resulting actions to obtain medical treatment are inadmissible to show that she was not totally disabled.[4]

Martinka alternatively argues that even if she was only partially disabled between January 29, 2018 and September 11, 2018, the Commission erred by concluding that she "failed to market her residual capacity." She insists that she had no duty to market her residual capacity until September 11, 2018, when Dr. Cohen "released" her to light duty work. Her argument is premised on a misunderstanding of Code § 65.2-502, the statute addressing compensation for partial incapacity. Code § 65.2-502 "*presumes* that where an injured worker is only partially disabled, that employee can continue working either on restricted duty or in an altogether new job." *Jones*, 66 Va. App. at 541 (emphasis added) (quoting *McKellar*, 290 Va. at 357). Consequently, the statute requires a partially disabled claimant to "make a reasonable effort to market [her] residual work capacity" before she is "entitled to temporary partial disability benefits." *Ford Motor Co. v. Favinger*, 275 Va. 83, 91 (2008). The conclusion that Martinka was partially disabled between January 29, 2018 and September 11, 2018 triggered her duty to market her residual work capacity as a matter of law. Martinka's failure to seek light duty employment during that period foreclosed a partial disability award. *Id.*

III. Disability from September 12, 2018 to October 22, 2018

Martinka next argues that the Commission erred by denying her partial disability benefits from September 12, 2018 to October 22, 2018 because she failed to market her residual work capacity. The Commission's decision turned on its finding that although Martinka was restricted

---

[4] Of course, the Commission did not find that the employer improperly denied Martinka's treatment, nor was the Commission bound to accept Martinka's assertions that she increased her courseload to obtain health insurance. In addition, to the extent Martinka argues that PHI's alleged "violations" served as an independent basis to award her benefits, she did not present that argument to the deputy commissioner or Commission, and we will not consider it for the first time on appeal. Rule 5A:18.

to "sedentary duties," she was not restricted to working only one or two days per week. Thus, the Commission concluded that by affirmatively choosing to teach only one to two days a week without applying for any other job, she created self-imposed restrictions and failed to adequately market her residual capacity. Martinka, however, insists that her doctors restricted her to working only 1 or 2 days per week and lifting no more than 15 pounds. She maintains that she complied with those restrictions by teaching and did not have any residual work capacity to market. She further contends that she made more money teaching in her field of expertise than her pre-injury wage, which benefited PHI and relieved her of any responsibility to look for work outside of her field.

As noted, a partially disabled claimant who does not "make a reasonable effort to market [her] residual work capacity . . . is not entitled to temporary partial disability benefits." *Favinger*, 275 Va. at 91. Determining "whether a partially disabled employee has adequately marketed [her] residual work capacity lies within the fact finding judgment of the [C]ommission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal." *Dollar Tree Stores, Inc. v. Tefft*, 69 Va. App. 15, 27 (2018) (second alteration in original) (quoting *Wall Street Deli, Inc. v. O'Brien*, 32 Va. App. 217, 220-21 (2000)). In determining whether a claimant has made a reasonable effort to market residual work capacity, the Commission considers, among other things, the extent of her job search and the availability of nearby positions. *Id.* at 28; *see Nat'l Linen Serv. v. McGuinn*, 8 Va. App. 267, 272 (1989). The Supreme Court has held that a claimant was not entitled to partial disability benefits when he "never applied for work elsewhere" and "there [was] no proof that he could not have marketed his remaining capacity for work." *Pocahontas Fuel Co. v. Agee*, 201 Va. 678, 681 (1960).

Although Martinka testified that Dr. Cohen told her at the September 11, 2018 appointment that she could work only one or two days per week, his letter following that appointment did not

- 15 -

impose any such restrictions. Instead, the letter only limited her to "sedentary duties such as teaching," effective September 12, 2018. Moreover, Dr. Cohen's notes from the September 11, 2018 appointment reflected that he restricted her work capacity not because of his evaluation of her injury, but based on her self-report of the duties she felt comfortable performing. Nothing in the appointment notes indicated that Dr. Cohen was aware of or considered Martinka's coursework, her weekly travel to and from Boston, or the 20-30 hours per week she devoted to studying when determining what restrictions to impose. Given those circumstances, the Commission was not plainly wrong in rejecting Martinka's testimony and concluding that she was not restricted to working only one or two days per week between September 12, 2018, and October 22, 2018.

Notwithstanding the absence of any work-hour restrictions, Martinka worked as a teacher only one to two days a week during that period and occasionally did clerical work for the family business. Although she testified that she had looked for "other teaching positions," she never applied for them because they "required a bachelor's degree," which she did not have at the time, or required "full time" employment, which was not within her self-imposed restrictions. Accordingly, the Commission did not err in determining that Martinka was not entitled to partial disability benefits between September 12, 2018 and October 22, 2018, because she failed to market her residual work capacity. *See Agee*, 201 Va. at 681.

IV. Disability from October 23, 2018 to October 29, 2019

Martinka challenges the Commission's determination that she failed to present any evidence of total or partial disability from October 23, 2018 to October 29, 2019. She maintains that the record contains "vast medical documentation" of treatment she received from Drs. Haley, Cohen, and Simon. Martinka asserts that "no evidence" demonstrated that she "had a change in her ability to work or a change in her work limitations at any point since she was

released to light duty work teaching on September 11, 2018." Additionally, the Commission's finding that she was partially disabled beginning October 30, 2019, in her view, supports the conclusion that she was also partially disabled before October 30, 2019. We disagree.

"[T]here is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time." *Hoffman v. Carter*, 50 Va. App. 199, 216 (2007) (quoting *Loehr*, 24 Va. App. at 679). Rather, the claimant bears the burden of proving that her disability extended for all periods for which she seeks compensation. *Id.* Thus, a doctor's letter reporting that a claimant is disabled—but also indicating that the disability is temporary—cannot, standing alone, prove that the claimant is entitled to continuing disability benefits. *See Loehr*, 24 Va. App. at 679-80. Indeed, we have held that a note keeping a claimant out of work "until [the] condition resolves (may be permanent)" was insufficient to prove a continuing disability. *Hoffman*, 50 Va. App. at 217. In *Hoffman*, we emphasized that the note did not indicate when the claimant "would undergo his next medical examination," and no medical evidence showed that the condition persisted to the date of the hearing. *Id.* Whether a claimant has met her burden of proving a "continuing disability is . . . a question of fact." *Id.* at 216.

On September 11, 2018, Dr. Cohen's office wrote a letter restricting Martinka to "sedentary duties" for six weeks and stating that her work status would be "further evaluated" at that time. Dr. Cohen's letter plainly evinced his intent only to restrict Martinka's work capacity beyond six weeks—which ended on October 23, 2018—if necessary after further evaluation at the next appointment. The record demonstrates that Martinka did not return to Dr. Cohen for treatment until December 18, 2018.[5] At that appointment, Dr. Cohen reviewed the MRI results

---

[5] Dr. Haley treated Martinka for pneumonia in November 2018, but did not address her compensable injury or work capacity.

with Martinka and planned future "lumbar injections." But he did not address her work capacity or continue any of the work restrictions he previously imposed.

Martinka next sought treatment for her compensable injury from Dr. Haley on April 17, 2019. Dr. Haley's notes reflect Martinka's self-report that she "can teach" and "needs to change position if sitting." Dr. Haley recommended that Martinka continue exercise, try acupuncture, and consider seeking a second opinion from an orthopedist. Dr. Haley did not impose any work restrictions. Martinka returned to Dr. Haley on September 4, 2019, with renewed complaints of back pain that worsened when "standing and teaching." Martinka reported that she could "walk fine" but remained "unable" to work as a flight paramedic. Dr. Haley prescribed lidocaine patches and referred her to Dr. Simon. But again, Dr. Haley did not impose any work restrictions. Martinka returned to Dr. Haley again on October 30, 2019, at which point Dr. Haley wrote a letter limiting Martinka's work capacity to "1-2 days a week" and lifting no more than 15 pounds.

Although Martinka saw several medical providers between October 23, 2018 and October 29, 2019, we do not presume that she was disabled merely because she has sustained a compensable injury and was receiving treatment. *See Hoffman*, 50 Va. App. at 216-17. To the contrary, she had the burden of proving both that she was disabled and that her disability extended to all periods for which she sought compensation. *Id.* at 216. The record contains no medical evidence establishing that Martinka's work capacity was restricted in any way after October 23, 2018, when Dr. Cohen's six-week restriction ended, and before October 30, 2019, when Dr. Haley first imposed work restrictions. Accordingly, the Commission did not err by concluding that Martinka had failed to demonstrate either a partial or total disability during that period.

V. Disability beginning October 30, 2019

Martinka argues the Commission erred by finding that she was not entitled to partial disability benefits beginning October 30, 2019 because she failed to market her residual work capacity. In reaching this determination, the Commission found that no medical evidence supported restricting Martinka's work capacity to one or two days per week. Instead, the Commission held that by choosing to teach only one or two days a week without applying for any other job, she failed to adequately market her residual capacity. Martinka stresses that on October 30, 2019, Dr. Haley limited her to working only 1 or 2 days per week and lifting no more than 15 pounds. She contends that she complied with those restrictions by teaching and did not have any residual work capacity to market.

As noted, "[t]he opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it." *Hayes*, 58 Va. App. at 238. "[S]uch an opinion is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 623 (2002). "If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'" *Tennessee*, 50 Va. App. at 279 (quoting *Sabol*, 47 Va. App. at 501-02). Where medical opinions conflict, "the [C]ommission [is] free to decide which evidence [is] more credible and should be weighed more heavily." *Thompson*, 38 Va. App. at 624.

The Commission acknowledged Dr. Haley's October 30, 2019 letter restricting Martinka's work capacity to one or two days weekly. Yet it determined that as a primary care physician, Dr. Haley's opinion was not entitled to as much weight as Dr. Cohen's, who was Martinka's initial treating orthopedist. When Dr. Cohen restricted Martinka to "sedentary duties" on September 11, 2018, he placed no limit on the number of days Martinka could work

- 19 -

each week, and the restriction he imposed ended on October 23, 2018. Moreover, although Dr. Simon also restricted Martinka to teaching a "couple of days a week" in July 2020, his report indicates that the restriction was an accommodation based on Martinka's self-report that "teaching a couple of days a week" was "tolerable," not based on his independent findings after an evaluation.

"[A] greater number of medical opinions does not necessarily constitute a preponderance of the evidence." *Georgia-Pacific Corp. v. Robinson*, 32 Va. App. 1, 5 (2000) (quoting *Island Creek Coal Co. v. Honaker*, 9 Va. App. 336, 339 (1990)). The record demonstrates that the Commission carefully considered the differing medical opinions and credited Dr. Cohen's, who never restricted the number of days Martinka could work. The record evidence supports the Commission's decision, so we will not disturb it on appeal.

Given the conclusion that Martinka's residual work capacity allowed her to work more than one or two days per week beginning October 30, 2019, she could receive partial disability benefits during that period only if she "ma[d]e a reasonable effort to market [her] residual work capacity." *Favinger*, 275 Va. at 91. By working only one or two days a week teaching and doing clerical work without applying for other sedentary jobs, she failed to market that residual capacity. *See Agee*, 201 Va. at 681. Thus, the Commission did not err in determining that she was not entitled to partial disability benefits after October 29, 2019.

VI. Post-hearing Evidence

Martinka argues that the Commission erred by not considering the screenshots she submitted detailing her Harvard class schedule. She contends that the deputy commissioner explicitly granted her permission to submit evidence of her coursework within 24 hours of the hearing.

The Commission has "broad discretion to adapt the conduct of the hearings to the circumstances of the case." *K&G Abatement Co. v. Keil*, 38 Va. App. 744, 753 (2002). It may "adopt whatever procedures it sees fit so long as they 'protect the substantial rights of the parties.'" *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 702 (2012) (quoting *Rios v. Ryan Inc. Cent.*, 35 Va. App. 40, 45 (2001)). Those procedures may include "limitations on the evidence that is submitted to it," and these decisions are reviewed "for an abuse of discretion." *Keil*, 38 Va. App. at 753.

At the evidentiary hearing, the parties reached no stipulation as to Martinka's post-injury average weekly wage. Consequently, the deputy commissioner agreed to hold the record open for 24 hours after the hearing so the parties could submit evidence on that issue. Later, Martinka testified that she could not remember which semesters required her to attend in-person classes at Harvard and asked the deputy commissioner if she could "have that twenty-four-hour thing to" submit evidence of "the specific semesters." The deputy commissioner did not respond to Martinka's question, and her testimony continued.

Given those circumstances, we find no abuse of discretion in the Commission's refusal to consider the post-hearing evidence of Martinka's class schedule. The deputy commissioner explicitly found that he left open the record "for the sole purpose" of receiving evidence on Martinka's post-injury average weekly wage. He "str[uck] from the record" Martinka's post-hearing submissions, and the Commission appropriately did not rely on those exhibits when ruling.

VII. Constitutional and Unlawful Termination Arguments

Martinka contends that the Commission was biased against her, as demonstrated by a series of rulings that she claims violated her due process rights under the United States Constitution. She asserts that the deputy commissioner inappropriately admitted certain defense

evidence, improperly issued a subpoena duces tecum, and prevented her from admitting "multiple sources of valid evidence." Martinka argues that the sum of those errors denied her "basic fairness" and amounted to a due process violation by denying her "property rights" to wage benefits. She further asserts that she is entitled to reinstatement, back pay, and "other appropriate relief" because PHI unlawfully terminated her employment when she asserted her rights under the Workers' Compensation Act. However, Martinka failed to preserve these arguments for appellate review.

"No ruling of . . . the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely* — so that the [Commission] would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Rule 5A:18 applies to bar even constitutional claims." *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)), *aff'd*, 270 Va. 1 (2005).

Martinka did not present her constitutional or unlawful termination arguments to the Commission. Nor did she include the arguments in a motion for the Commission to reconsider its decision. Consequently, her arguments are not preserved for appeal. Rule 5A:18; *see also Hodnett v. Stanco Masonry, Inc.*, 58 Va. App. 244, 253 (2011) (holding that a claimant's argument was not preserved because he did not present it to the Commission). Although Rule 5A:18 contains certain exceptions, Martinka does not invoke them, and we will not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023); *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

## CONCLUSION

For the foregoing reasons, the Commission's judgment is affirmed.

*Affirmed.*